Festi *v.* Proctor & Schwartz, Inc., Appellant.

Argued September 30, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*J. Webster Jones,* and with him *Ralph N. Kellam*
and *Irvin F. Holt,* for appellant, cited: Milwaukee
Locomotive Co. v. Point Marion Coal Co., 294 Pa.
238; Puhlman v. Excelsior Co., 259 Pa. 393.

*Ralph B. Evans,* and with him *Charles W. Gamble,*
for appellee, cited: Standard Oil Co. v. Anderson, 212
U. S. 215; Bojarski v. Howlett, Inc., 291 Pa. 485.

OPINION BY STADTFELD, J., December 16, 1932:

These are appeals by defendant company from the
judgments entered on verdicts in favor of minor plain-
tiff and her mother, in an action of trespass for per-
sonal injuries sustained by the minor plaintiff by rea-
son of the falling upon her of a heavy machine, known
as a boarding machine or dryer, while she was at work
in the mill of H. C. Aberle & Company where she was
employed.

The defendant, Proctor & Schwartz, Inc., is a manu-
facturer of machinery, and among the various kinds
of machinery manufactured by it, are stocking drying
machines, known as dryers. These dryers, resembling
an upright piano, are about 6½ ft. in length, about 3 ft.
wide, about 6 ft. high, and weigh approximately 1,100
lbs. with the weight principally at the top.

The Aberle Co., the employer of the minor plaintiff,
is a manufacturer of women's stockings with its plant
in Philadelphia. The Aberle Co. had originally pro-
cured three of these dryers from Proctor & Schwartz

and they had been originally installed by the latter. The Aberle Co. had erected an addition to its plant, and when this addition was completed, it desired to move these dryers, which had been purchased two or three years before, to the new section of its plant.

The plaintiff, Jennie Festi, was an employee of Aberle Co. and was a boarder of stockings. On May 3, 1929, while one of these dryers was being moved, it toppled over and pinned her between the dryer that was being moved, and a similar dryer which she was operating.

The plaintiff's statement of claim avers that the defendant, Proctor & Schwartz, by its agents, servants and employees was engaged in moving certain machinery in the mill of the Aberle Co., and that plaintiff was injured by the carelessness of the defendant's servants, agents or employees, who permitted the machine to topple over and injure her.

The affidavit of defense denies these allegations of agency, and set up that although one J. R. Taylor, who was then and still is on the payroll of the defendant Proctor & Schwartz, was present and engaged in dismantling and reassembling the machinery, he was not in or upon the business of the defendant Proctor & Schwartz, but had been loaned to the Aberle Co.

There is no conflict of testimony as defendant called no witnesses to controvert the evidence ex parte plaintiff. The sole question, as stated by appellant, is "Does the evidence submitted by the plaintiff affirmatively show that the employee Taylor was the servant of the defendant so as to charge the defendant under the doctrine of respondeat superior, or does the testimony show that the status of Taylor was that of a servant who had been loaned to the employer of the plaintiff and who was engaged solely in the business of the plaintiff's employer in such manner as to make him for the time being the servant of the plaintiff's

employer, although he remained in the general service of the defendant?''

The contract was partly oral and partly in writing and consisted of a conversation between Carl D. Goldacker, production manager of the Aberle Company, and one Tiers, assistant sales manager of defendant company. Goldacker testified that the machines had to be partly dismantled and that they needed some expert advice to put them together so they would work. There was a conversation between the witness and Tiers, and also between Mr. Aberle and Tiers, in the hearing of the witness. His testimony was "Q. Did you give Proctor & Schwartz an order to move these machines? A. We gave them a verbal order. By the court: Q. Was there a written order? A. I spoke to Mr. Tiers. Q. Who did? A. Mr. Aberle and myself, about three or four times. At that time he said they were very busy and they would—they would supply us with a man. Q. Did you receive from the Proctor & Schwartz Company a written confirmation of the order to move those machines? A. We received a written confirmation, typewritten.''

This written confirmation reads in its material parts as follows: ''Acknowledgment of order, Proctor & Schwartz, Inc., Philadelphia, for Harry C. Aberle Company Order No. C-79641 H Do we install? Yes. We are to send a man to above plant to dismantle three (3) of the purchaser's Automatic Boarding, Drying and Stripping Machines, and Re-erect them in another location. $1.75 per hour for Man's Time, Plus All Expenses—Time and Half for all Overtime, Including Saturday Afternoons, Sundays and Holidays.''

Goldacker testified that there was a conversation between the parties preceding the receipt of this paper: ''A. We had Mr. Tiers down and told him we thought it advisable to have one of their men move these machines, because of the fact that he knew considerably

more about the adjusting of these machines than one of our men did. That was the gist of the conversation that we had, and later on we had spoken to him again and he said he would get a man down as soon as it was possible to get him off the road. Then he came down I think the third time—Q. Who did. A. Mr. Tiers, and said that he expected a man off the road from the South the following week, and that he would send that man up to take care of the machines.''

Aberle showed Taylor which machines were to be dismantled and where they were to be placed, and had six or seven of their men assist Taylor. Aberle & Co. did not show or direct these men during the dismantling or the moving.

Cottrill, a laborer in the employ of Aberle & Co. and who was one of the men who assisted Taylor, testified that at the time of the accident there were three men helping, he, Slingsby, a so-called ''handy man'' in the employ of Aberle, and Taylor. ''He (Taylor) would order us where to place the machine, we took orders from him, he directed the operation where to put it, what to do in regard to lifting or lowering it......he was directing the operation. This dryer had been moved from one part of the plant to another part. It was supported on three skids or three by four timbers, two ran lengthwise and one ran crosswise. The machine was about 2½ feet away from the machine where the minor plaintiff was working, with her back to the machine which had been moved. He (Taylor) told us to raise it a little so he could take the skid from under it. He tried to get the skid out, he was shaking the skid to pull it from under, he took charge of the machine, and it went that way......and it tumbled right over, towards the girl. He was shaking the skid loose while we were lifting it up.''

Slingsby, who was foreman of the so-called handymen, and assisted in the moving of the machine, testi-

fied that Taylor told him what to do and when to do it. We had moved the dryer and it was standing on two skids. "He told us to lift up one end so he could get the skid out to move it in place, and one end nearly was out, practically he just had it out, and while getting it out, he was moving it to the right and left to get it out, and just as he was going that way, the skid just turned flat on its side and the machine that was right over the skid went like that, it was top-heavy, and it fell over like that, wiggling it turned over like that, the dryer was too heavy, we could not stop it from going on the girl."

Graham, engineer in the employ of Aberle Co. testified that he got orders the night before the accident from Goldacker to get the necessary materials to do the work. Taylor asked him to get some ties three by four bars, and he (Taylor) put two ties underneath with cross pieces to hold them together, to keep them from spreading.

It took a little longer than a week to move the machines. They had been moved across to the place where they were to go. A bill was rendered by Proctor & Schwartz Co. to the Aberle Co., for the time spent by Taylor in moving these machines, and paid by the latter company.

The court instructed the jury, in part, as follows: "The test as to whether Taylor was a servant of Aberle in doing this work or the servant of the defendant, Proctor & Schwartz, is mainly whether the parties contemplated and undertook that Taylor in performing the work, of which the alleged negligent act was a part, was to be under the control of the defendant, Proctor & Schwartz, or under the control of Aberle, in the manner in which he was to do the work in the Aberle plant—whether it was contemplated by and the intention of these parties that Taylor was to be subject to the orders of Aberle from the moment he

entered the Aberle plant, or whether he was to be subject to the direction and control of Proctor & Schwartz in the manner in which the work was to be done. What did these parties have in mind? Whose orders was Taylor to obey while in the Aberle plant, as to what he should do and how he was to do it.

If you find from the oral and written evidence that the parties intended that Taylor was to do the work in obedience to the orders of Proctor & Schwartz and to their orders only, as to the manner in which he was to do the work, then you would be justified in finding that Taylor was an employee or servant of Proctor & Schwartz, and if you conclude that some negligence of Taylor caused the injury to this young girl, then the plaintiffs would be entitled to verdicts against the defendant, on this finding that Taylor was working for the defendant and was negligent. On the other hand, if you conclude from the oral and written evidence that the parties had in mind that Taylor was to become for the time being, for this special work, the servant of Aberle, in that he was to be subject to the orders, to be bound to obey any instructions given to him by Aberle as to the manner in which, as well as to when and where the work was to be done, then your conclusion would be that Taylor was the servant temporarily of Aberle, and to that extent passed out of the service of Proctor & Schwartz, and if Taylor was guilty of some negligent act, then Aberle would be responsible and not Proctor & Schwartz, and your verdict would have to be for the defendant, leaving the young woman to her recourse against her own employer.......

If you find that the contract and intention of the parties was that Taylor was not to participate in any way in the moving of the machines, and that the accident occurred while the machine was still being moved, then your verdict should be for the defendant. But

if you find that the intention of the parties was that Taylor was to participate not only in the actual and specific dismantling and re-erecting, but in the transportation or moving of the machines from one location to another, and that the accident happened while the machine was being moved and that Taylor was the servant of the defendant, under the rules as I have indicated to you, and he was negligent, then your verdict should be for the plaintiffs. It may be that you will conclude that the accident happened while the machine was being re-erected. If so, then this last question that has been raised, as to the moving, would have no bearing upon your decision.

"What was the undertaking of the parties in that agreement made?"

The jury by its verdict for plaintiff found that under the contract of hiring Taylor was to have entire charge of the work free from any orders or control on the part of the hirer and that his work included the moving as well as the dismantling and re-erecting of the machines.

The court overruled the motion ex parte defendant for judgment n. o. v. saying: "Because of our conclusion that the contract which gave rise to this litigation was one that involved performance of an expert service, and that the manner in which the work of dismantling and reassembling the machines was to be done was manifestly to be determined by the contractor (the defendant) who possessed the requisite expert knowledge and experience, and not by the contractee (Aberle Company), whose very lack of requisite skill and experience furnished the motive for making the contract with defendant...... It is inconceivable that the parties intended that the Aberle Company was to have command over the expert furnished by the defendant insofar as to direct how he should perform the labor of taking down and re-erecting the machines. The expert Taylor was undoubtedly the servant of defendant in the doing of that work."

From the judgments entered on the respective verdicts these appeals are taken:

The sole question is the sufficiency of the evidence to sustain a recovery under the doctrine of respondeat superior.

At the time of the making of the contract it was known to both parties that Taylor could not do the work of moving without assistance. In view of the expert service required in dismantling as well as in re-erecting the machines at some other place in the building, we believe that the jury under the evidence was justified in finding that the moving of the machine was contemplated under the agreement.

If Taylor, the general servant of defendant was sent to take down, move to another place and re-erect machines in the contractee's mill, and if in so doing he was to use his own judgment and skill and was not subject to the orders and directions of the contractee, his original status as defendant's employee and servant remained, and defendant was liable for his negligence in the doing of the very work he was sent out to do.

No supervision was exercised by Aberle & Co., all the work was directed and supervised by Taylor. Taylor not only had the right to act without any directions from the contractee, but he did so act and was so acting when his own personal negligence or want of skill caused the accident.

In a well considered case by our Supreme Court, Robson v. Martin, 291 Pa. 426, Mr. Justice SADLER, discussing the principles governing in such cases, said at page 431: "In such cases consideration must be given to the character of the service to be rendered in determining whether the one employed becomes temporarily the servant of another. If there has been an engagement to supply some specified work, control in the manner of performing it being reserved, the

hirer merely giving general directions as to the result to be reached, the original employer still remains the master of the servant who is under his supervision and carries out his orders. This is illustrated by the so-called "carriage cases," where the letting is of a vehicle and driver to transport to a particular destination, but the owner of the conveyance controls it and the operator supplied. As a result, he remains liable as a master whose business is being furthered (Puhlman v. Excelsior Cab Co., 259 Pa. 393; Funston v. Ingenito, 282 Pa. 124; Wallace v. Keystone Auto Co., 239 Pa. 110; Gresh v. Wanamaker, 221 Pa. 28), and is responsible for the negligent conduct of his servant: Thatcher v. Pierce, 281 Pa. 16; Crouse v. Lubin, 260 Pa. 329. When the accident occurs in the course of such an employment the bailee is not answerable for the negligence of the driver, unless he has in some manner assumed control, or interfered with the way in which the vehicle is operated: Connor v. McCandless, 84 Pa. Superior Ct. 307; Matlack v. Chalfant, 69 Pa. Superior Ct. 49; Wollaston v. Park, 47 Pa. Superior Ct. 90."

Likewise in Bojarski, Appellant, v. Howlett, Inc., 291 Pa. 485, the same judge, in a review of the authorities, on pages 488, 489, said: "An independent contractor is a person employed to perform work on the terms that he is to be free from the control of the employer as respects the manner in which the details of the work are to be executed. The question is: "Was the act in the business in which the master is in control as a proprietor, so that he can at any time stop or continue it, and determine the way in which it shall be done, not merely in reference to the result reached, but in reference to the method of reaching the result?' Byrne v. Hitner's Sons Co., 290 Pa. 225, 230. One may still be an independent contractor though certain supervision is reserved to the hirer for the purpose of

seeing that a desired result is reached, such as the retention of the power to fix the time or place of doing the work, or its quantity (Brooks v. Buckley & Banks, 291 Pa. 1; 39 C. J. 1320), so long as the one employed to perform the service is not deprived of proceeding to reach the desired end according to his own initiative: Simonton v. Morton, 275 Pa. 562.''

Taylor was in the general employ of the defendant and there is no evidence of any suspension of that relation and the creation of a new like relation between Taylor and Aberle & Co. The jury by its verdict found in favor of plaintiff on the facts essential to a recovery in this case. The cases cited by appellant are readily distinguishable in their facts from the instant case. The case was fairly and correctly submitted by the trial judge, and there is sufficient testimony to sustain the verdicts.

The assignments of error are overruled and judgments affirmed.