VAUGHAN et al. v. WARNER et al.
(GRAVES et al., Third-Party Defendants).

No. 9053.

Circuit Court of Appeals, Third Circuit.

Argued April 19, 1946.

Decided Aug. 8, 1946.

Philadelphia, Pa., of counsel), for claimant-appellee, Frances E. Morrow.

Before BIGGS and GOODRICH, Circuit Judges, and GOURLEY, District Judge.

GOURLEY, District Judge.

From a date prior to 1936 and continuing thereafter until July 2, 1940, George T. Graves owned and operated in Philadelphia, Pennsylvania, a vaudeville and motion picture theatre known as Carman Theatre. In the course of his business, George T. Graves engaged the services of vaudeville artists who were singers, dancers, magicians and special performers of the type usually appearing in vaudeville theatres in conjunction with moving pictures. These vaudeville artists were engaged by George T. Graves through a New York booking agency under specific contracts not subject to cancellation, and designating the performers as independent contractors, and requiring them to appear for rehearsals and conform generally to the regulations of the theatre. The management reserved only the right to delete objectionable features and to vary the exhibitions to the extent of prescribing the duration and appropriate place in the program. It had no control over the manner of performance or the direction of the individual talents of the artists.

On July 2, 1940, a receivership in equity was created, pursuant to the terms of a mortgage secured on the Carman Theatre, in order to preserve and protect the rights of lien holders under said mortgage. On the same day, pursuant to an Order of the District Court of the United States, Eastern District of Pennsylvania, Jay Emanuel, George McHugh, and Norman Fernon, Receivers, entered into possession of the Carman Theatre and continued the operation of the business thereof until the receivership was terminated May 27, 1943. During the period of their operation of the theatre and in the course of the business thereof, the Receivers continued to engage, through a New York booking agency, the services of vaudeville artists to appear from time to time and in conjunction with the showing of motion pictures to perform in the theatre for remuneration.

In the operation of the theatre, the Receivers followed the practice previously

John F. Finney, of Philadelphia, Pa. (David R. Perry, Sp. Deputy Atty. Gen., and James H. Duff, Atty. Gen., on the brief), for appellant.

Samuel H. Levy, of Philadelphia, Pa. (Morris Wolf and Stanley E. Gilinsky, both of Philadelphia, Pa., on the brief; Wolf, Block, Schorr & Solis-Cohen, of

adopted prior to receivership. All vaudeville acts were booked through the Edward Sherman Agency at New York City, which was paid $15 a week by the theatre or the Receivers as the booking agency's commission. Separate contracts were entered into for each act, and the acts were selected by the Sherman Booking Agency and scheduled to conform generally with the type of motion picture being exhibited and the length of time available for the vaudeville acts. Vaudeville acts made available by the Booking Agency were either for a period of three days or for one week exclusive of Sundays. The Sherman Booking Agency would execute a separate contract for each vaudeville act with the artist, person or persons who were to perform in the act. Each act furnished its own properties and the management had no control over the performances other than to specify the time and order of appearance, or to delete objectionable or inappropriate lines or features. The performers were artists having special talents, and their compensation was based upon their commercial value to the exhibitor or their individual drawing power. The compensation or rate of pay of the artists was arrived at by bargain, and the contracts expressly represented the artists as individual contractors. On the basis of the contract the theatre owner, and subsequently the Receivers, paid the entertainer or the person in the vaudeville act who was stipulated in the contract. For instance, if there were five people in the act, one person would be designated to collect the amount provided in the contract. In addition thereto, the theatre owner, and subsequently the Receivers, deducted the amount of five percent (5%) from the contract price for the Edward Sherman Booking Agency and forwarded said amount to said Agency. Furthermore the Edward Sherman Booking Agency executed the contracts with the entertainer in behalf of the theatre and the Receivers. The contract which was executed in each of the cases with the entertainer followed a common form. A typical contract is set out in footnote 1. [1]

Under and pursuant to the provisions of

---

[1] (Contract dated January 12, 1943, between George McHugh and Keith Clark was marked for identification Commonwealth's Exhibit 7, and follows:)

"New York Office
"Paramount Building
"43rd & Broadway
"Phone. Wisconsin 7–7674
Edward Sherman
Agency
"Philadelphia Office
"Real Estate Trust Bldg.
"Broad & Chestnut Sts.
"Phone. Pennypacker 7595

"Agreement made January 12, 1943, by and between George McHugh (as and hereinafter called the 'Theatre'), and Keith Clark (as and hereinafter called the 'Owner')——(consisting of one person)——

"1. Theatre purchases and engages and Owner agrees to perform, cause to be rendered or performed, or to supply the Act in the premises of Theatre as above described and at not more than Policy of Theatre performances daily upon the dates and for the purchase price stated below and payable at the conclusion of the final performance thereof.

| Theatre | City | Period |
|---|---|---|
| Carman | Philadel- | Six days out |
| Rehearsal | phia, Pa. | of Seven |
| 9 A.M. Sharp | Purchase | |
| | Price | |
| | $185.00 | |

"Friday Opening
"Check Baggage to North Philadelphia
"Imperative That Artist Furnish the Following Orchestrations:
"Piano
"Drums
"3 Saxophones & Clarinets
"2 Trumpets
"Trombone
"Bass Viol
"Leader

"2. Owner agrees: (a) He will furnish and deliver, immediately after signing this agreement, to Edward Sherman Agency suitable billing and advertising matter, program copy, scene, light and property plots, non-copyright photographs and other helpful material for the billing and exploitation of the Act; (b) He will furnish complete legible orchestrations of all music used, for use by all members of the orchestra; (c) The Act will not violate the standards of decency and morality of the community or of any ordinance, regulation or law thereto pertaining.

"3. Owner agrees to pay and to save Theatre harmless from: (a) Any and all attorneys' fees and disbursements incurred by Theatre in or by any Court proceedings to garnish or attach the purchase price payable to Owner hereunder; (b) All liabilities and damages for inju-

the Pennsylvania Unemployment Compensation Law, the Receivers filed reports and paid to the appellant, Commonwealth of Pennsylvania, unemployment compensation contributions based upon wages paid certain types of individuals performing services in and about the theatre. The Receivers, under protest, filed employers' reports as to the remuneration paid by them to the vaudeville artists appearing and performing

ries or death suffered or caused by any member of the Act including Owner during the performance of this agreement, including disbursements and attorneys' fees reasonably incurred by Theatre in the defense thereof.

"4. Owner, as an independent contractor, agrees to make all reports and returns for, and to pay and arrange for payments of all Social Security obligations by and for the Act and the members thereof due the Federal Government and any State; and to execute all confirmations and waivers thereof as provided in governmental regulations.

"5. Owner warrants that he is fully authorized to use in the performance of the Act all material used therein such as title, story, literary material, dialogue, routine business, dances, incidental music, and all songs including lyrics and music. If any claim is made to the contrary, including (but not limited thereto) any assertion that the Owner is infringing any literary property rights, or the right of privacy, or committing any defamation, Owner agrees to indemnify and save Theatre harmless as to any liability arising therefrom including attorney's fees and other disbursements; and upon any such notice of any claim being received by Theatre, or Theatre having reasonable grounds to fear that such notice may be served, Theatre may require Owner to furnish a surety bond in an amount fully indemnifying Theatre as to the foregoing liability.

"6. If Owner, for any reason except illness or Act of God, fails to cause the performance of the Act hereinbefore specified or substantially violates any of the terms hereof, Theatre may terminate the remaining performances hereunder. If Owner is prevented himself, or as to any of the important members of the Act, by illness or Act of God, from the giving of the performances after the beginning of such performances, Owner shall receive only the pro rata part of the purchase price for the performance actually given. By the Act of God is meant fire, accident, riot, epidemic, casualty, order of any authority, strike, or any other cause beyond the control of Theatre or Owner. If the Theatre shall close such theatre or change the stage policy, thereof, Theatre may cancel its obligations hereunder on at least one week's notice to Owner.

"Theatre shall have the right in the event Owner alleges the illness of himself or any member of the Act to require Owner to supply to Theatre a written certificate by a licensed physician who has examined the person or persons asserted to be ill, stating such illness and that such illness prevents the performance by the person so suffering therefrom.

"7. Owner agrees that he and the Act will not perform or permit the use of his or the Act's name in or as to any other theatre, on the radio, or otherwise, publicly or privately, in any manner whatsoever, or in any advertisement, or publicity announcements, between the date hereof and the expiration of thirty days after the termination of the performance herein provided for, in any city in which such engagement is herein provided for, or within a radius of fifty miles thereof, unless the written consent of Theatre is so obtained.

"Since the Act is unique and damages will constitute an inadequate remedy to Theatre, Owner agrees that Theatre shall be entitled to injunctive relief against Owner and the members of the Act.

"8. A week hereunder shall consist of seven days only in such theatres and cities where the Act may lawfully be performed on Sundays. The waiver of any default by either party shall not be deemed a waiver of any default as to any other term or condition, or a waiver of a subsequent default of the same term or condition thereof. No statement or promise by Theatre shall be binding unless stated in writing in this agreement.

"9. Owner designated the Miles Ingals as his personal representative. Any agreement or modification hereof made by such representative shall be binding upon Owner. Notices and service of any legal documents upon such representative shall be deemed notices upon Owner, and representative shall be deemed the irrevocable agent for such purposes. Any notice shall be deemed sufficient if in writing and mailed by Registered Mail, postage prepaid, addressed to Owner or such representative.

"10. It is distinctly understood and agreed that Edward Sherman Agency assumes no liability whatsoever hereunder either to the Theatre or the Owner, anything herein elsewhere contained to

in the theatre, but refused to pay unemployment compensation contributions based thereon. Appellant filed with the Receivers its claim for such contributions, together with statutory interest thereon in accord with the Act of Assembly in such case made and provided. Payment of such contributions and interest was refused.

On May 27, 1943, James L. Baxter was appointed Special Master to audit the First and Final Account of the Receivers filed. On April 23, 1945, the Special Master filed a second report, and denied therein payment to the appellant of its claim. Appellant filed with and argued before the lower court exceptions to this second report of the Special Master. The lower court entered an order dismissing the exceptions and confirmed the report of the Special Master. The Commonwealth of Pennsylvania appealed from this order.

The appellant contends that the District Court erred in holding that the principal question involved was whether vaudeville artists who fill engagements of several days duration at the Carman Theatre were employees within the meaning of the Pennsylvania Unemployment Act, or whether they were independent contractors. Appellant argues that the two main questions involved were:

(1) Did the services performed by the "vaudeville entertainers" at the Carman Theatre for remuneration paid by the management in the course of its enterprise constitute "employment" within the meaning and intent of the Pennsylvania Unemployment Compensation Law of December 5, 1936, P.L. of 1937, 2897, as amended, 43 P.S. § 753 et seq.?

(2) Did the remuneration paid such "vaudeville entertainers" for such services rendered constitute "wages" within the intent and meaning of the Pennsylvania Unemployment Compensation Law of December 5, 1936, P.L. of 1937, 2897, as amended, 43 P.S. § 753 et seq.? [2]

Claims for the recovery of unemployment

---

the contrary notwithstanding. It is further agreed that five (5%) per cent of the purchase price provided to be paid to the Owner hereunder shall be deducted by the Theatre from such sum or sums and paid to Edward Sherman Agency for procuring this engagement for the owner.

"In witness whereof, the parties have executed this agreement the date above stated.

> "Keith Clark  George McHugh
> "Owner  Theatre
> "By Keith Clark  By Edward Sherman"

[2] The pertinent portions of the Unemployment Compensation Law, which have application to the matter at issue, Act. of Dec. 5, 1936, P.L. (1937) 2897, sec. 4, as amended by the Act of Apr. 23, 1942, P.L. 60, sec. 1, and the Act of May 27, 1943, P.L. 717, No. 312, sec. 1, 43 P.S. § 753, read as follows:

"(h) 'Employe' means every individual, whether male, female, citizen, alien or minor, who is performing or subsequent to January first, one thousand nine hundred thirty-six, has performed services for an employer in an employment subject to this act.

"(i) 'Employer' means every—(1) individual, (2) copartnership, (3) association, (4) corporation (domestic or foreign), (5) the legal representative, trustee in bankruptcy, receiver or trustee of any individual, copartnership, association, or corporation, or (6) the legal representative of a deceased person, (I) who or which employed or employs any employe (whether or not the same employe) in employment subject to this act for some portion of each of some twenty (20) days during the calendar year one thousand nine hundred thirty-six, or any calendar year thereafter, each day being in a different week, or (II) who or which has elected to become fully subject to this act, and whose election remains in force.

"(j) (1) 'Employment' means all service performed prior to the first day of January, one thousand nine hundred forty-two, which was employment as defined in this section prior to such date * * * for remuneration or under any contract of hire, express or implied, written or oral."

"(j) (2) (B) * * * An individual performing services for remuneration in an employment subject to this act shall be deemed to be performing such services for wages, unless and until it is shown to the satisfaction of the department that—(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) that such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and (c) that such individual is customarily engaged in an

taxes applicable to the vaudeville performers involved in this case were originally filed both by the Federal Government and the Commonwealth of Pennsylvania. Both claims were denied by the Receivers. The Special Master sustained the Receivers' action.

The first problem before the Court is the orientation of the facts in this case into the law applicable in the federal court. Federal jurisdiction is invoked solely on account of the receivership of the defendants; there is no independent federal question involved before the Court in the claims of the Commonwealth. Since the claim of the Commonwealth is based on the provisions of a Pennsylvania statute, the Court must first try to determine, by all the available decisions which might exist, what construction has been placed on said statute by the courts in this Commonwealth. The Supreme Court of the United States and the Circuit Court of Appeals in this Circuit and other circuits have repeatedly held that in the interpretation or construction of a state statute, it is the duty of the federal courts to accept the meaning ascribed to state laws by the highest court of the state.[3]

If no interpretation or construction has been placed on said Act of Assembly by the Supreme Court of Pennsylvania, it is next necessary for the federal court to ascertain whether or not any alternative determination of the questions which exist has been made by any other appellate tribunal in the Commonwealth of Pennsylvania, and if this has not been done, whether or not the trial courts are in agreement.[4]

It, therefore, appears that we are bound to give due deference to the state law as declared by the highest court in the Commonwealth, any other appellate tribunal, or decisions of the lower court, if in accord, which will govern in disposing of the questions now before this Court.

The Pennsylvania Unemployment Compensation Act imposes contributions on an employer as an excise tax. The Federal Social Security Act, Section 901, 42 U.S.C.A. § 1101, so defines it, and the United States Supreme Court so construed it.[5]

Since the payments provided by the Unemployment Compensation Act are in a nature of an excise tax, every doubt of its application must be resolved in favor of the defendant and against the taxing power. Planters' Lumber Co. v. Wells, 147 Miss. 279, 112 So. 9.

Tax statutes must be strictly construed, and words must be clear and unambiguous to subject the taxpayer to the tax. Commonwealth v. Philadelphia Rapid Transit Co., 29 Dauph. Co. Rep., Pa., 298; Id., 287 Pa. 190, 134 A. 455. The Commonwealth has the burden of showing that the property, on which it is seeking to impose a tax, comes within the statute, and any doubt or uncertainty should be resolved in favor of the taxpayer. Commonwealth v. Quaker City Cab Co., 29 Dauph. Co. Rep., Pa., 90; Id., 287 Pa. 161, 134 A. 404; In re Barber's Estate, 304 Pa. 235, 155 A. 565. Tax laws are to be construed most strictly against the government and most favorably to the taxpayer, and the citizen cannot be subjected to special burden without clear warrant of law. In re Husband's Estate, 316 Pa. 361, 175 A. 503; In re Arbuckle's Estate, 324 Pa. 501, 188 A. 758. The Court should not impose taxation by a strained construction of doubtful legislation. In re Krause's Estate, 325 Pa. 479, 191 A. 162. It is not enough to show that the absence of tax would work injustice. Commonwealth v. Philadelphia Rapid Transit Co., supra.

---

independently established trade, occupation, profession or business."

[3] Madden v. Kentucky, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590, 125 A.L.R. 1383; Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Mitchell v. Ottinger, 3 Cir., 105 F.2d 334; Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231.

[4] McClaskey v. Harbison-Walker Refractories Co., 3 Cir., 138 F.2d 493; Overfield et al. v. Pennroad Corp. et al., 3 Cir., 146 F.2d 889.

[5] Steward Machine Co. v. Davis, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1278, 109 A.L.R. 1293; Helvering v. Davis, 301 U.S. 619, 672, 57 S.Ct. 904, 81 L. Ed. 1307, 109 A.L.R. 1319.

██ Applying these principles, it is settled that the Commonwealth must show a clear right to the tax.

It has been persistently argued by counsel for the Commonwealth that under the provisions of the Unemployment Compensation Act, an individual performing services for remuneration in an employment subject to this Act shall be deemed to be performing such services for wages, unless and until it is shown to the satisfaction of the department that—(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) that such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and (c) that such individual is customarily engaged in an independently established trade, occupation, profession or business.

In other words, the Commonwealth contends that the burden of proof is upon the defendant to show that he comes within all of the exceptions just referred to, Section 4(j) (2) (B) of the Pennsylvania Unemployment Compensation Law, Act of Dec. 5, 1936, P.L. (1937) 2897, as amended, 43 P.S. § 753; that the legislature provided for the tests, conjunctive in nature, which must be here applied, and that the record does not disclose any evidence which brings the defendant within all of the conjunctive tests or exceptions.

The defendant contends that it is an independent contractor and, as a result thereof, is not under the Unemployment Compensation Act by reason of the three tests or exceptions; that the burden in this proceeding is not unlike that of every other plaintiff, viz: that the person seeking a right of recovery must prove his case by the fair weight of the evidence.

It is well then next to consider the decisions of the appellate tribunals in the Commonwealth of Pennsylvania pertaining to facts and circumstances similar to the case at bar as to whether or not such a relationship is that of an independent contractor or one of employer and employee. [6]

██ Where a contract is let for work to be done by another in which the contractee reserves no control over the means of its accomplishment, but merely as to the result, the employment is an independent one establishing the relation of a contractee and contractor and not that of master and servant. The control of the work reserved in the employer which makes the employee a mere servant is a control, not only of the result of the work, but also of the means and manner of the performance thereof, and a reservation of the right to supervise and inspect the work during performance does not make the contractor a mere servant, where the mode and means of performance are within his control. The assent of both parties is essential to create the relationship of master and servant. [7]

██ We are, therefore, of the opinion that the contracts in question in this case clearly show that the individuals who performed entertainment as specialists or

---

[6] In the Restatement of the Law of Agency, Chap. 1, Sec. 2, (2), (3), page 11, it is provided:

"A servant is a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master.

"An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking."

And in Chap. 7, Sec. 220, page 483, the rules for determining whether one is a servant or an independent contractor are set out at length, and the Pennsylvania Annotations in the Pocket Parts show that the Pennsylvania authorities are overwhelmingly in accord with those rules.

[7] Sechrist v. Kurtz Brothers et al., 147 Pa.Super. 214, 24 A.2d 128; 14 R.C.L. p. 68, 69; Simonton v. Morton, 275 Pa. 562, at page 568, 119 A. 732, at page 734; Healey v. Carey, Baxter & Kennedy, Inc., et al., 144 Pa.Super. 500, 504, 19 A.2d 852; Gravatt v. State Workmen's Insurance Fund et al., 140 Pa.Super. 435, 14 A.2d 143.

vaudeville actors were independent contractors as tested by the definitions set out in Chap. 1, Sec. 2 of the Restatement of the Law of Agency and the decisions of the appellate courts in the Commonwealth of Pennsylvania hereinbefore referred to.

In the case of McCracken, Appellant, v. Slemmer et al., 112 Pa.Super. 135, 170 A. 453, The Golden Dragon Restaurant, Inc., entered into a contract with a person by the name of Art Coogan to furnish nine musicians at the restaurant for the purpose of entertainment. The restaurant owner became involved financially and, as a result thereof, a landlord's distress warrant was issued and subsequent thereto, one of the musicians filed a claim for wages as provided by the Act of April 9, 1872, P.L. 47 as amended by the Acts of June 13, 1883, P.L. 116 and May 12, 1891, P.L. 54, 43 P.S. §§ 221, 222. Said claim was filed by the musician for wages to be paid out of the proceeds of the Constable's sale to be held by virtue of the landlord's warrant for delinquent rent. The Superior Court of the Commonwealth of Pennsylvania held that the contract of employment excluded the legal conception of the relationship of master and servant, viz., that a servant is one employed to render personal services to his employer, otherwise than in the pursuit of an independent calling, and in such service remains so entirely under the control and direction of the employer that the latter has the right to select and discharge the servant and to direct both what work shall be done and the manner in which it shall be performed.

It has been argued that the defendants in these cases had control over the vaudeville actors or specialists for the reason that the theatre owner or the receivers had the right to delete objectionable features, and to vary the exhibitions to the extent of prescribing the duration and appropriate place in the program. It must be remembered furthermore that the theatre owner had no control over the manner of performance or the direction of the individual talents of the artists, and that the contract was not subject to cancellation.

It has been held by the higher appellate tribunals in the Commonwealth of Pennsylvania that one may still be an independent contractor though certain supervision is reserved to the hirer for the purpose of seeing that a desired result is reached, such as the retention of the power to fix the time or place of doing the work, or its quantity, so long as the one employed to perform the service is not deprived of proceeding to reach the desired end according to his own initiative. [8]

The Commonwealth has cited in support of its contention the cases of Leinbach Co. v. Unemployment Compensation Board of Review, 146 Pa.Super. 237, 22 A.2d 57; Palumbo v. Unemployment Compensation Board of Review, 1942, 148 Pa.Super. 289, 25 A.2d 80; American Writing Machine Co. v. Unemployment Compensation Board of Review, 148 Pa.Super. 299, 25 A.2d 85; Superior Life, Health & Accident Insurance Co. v. Unemployment Compensation Board of Review, 1942, 148 Pa.Super.Ct., 307, 25 A.2d 88; and Steel Pier Amusement Co. et al. v. Unemployment Compensation Commission et al., 127 N.J.L. 154, 21 A.2d 767. None of these was a tax case. They were all appeals from orders directing the payment of unemployment compensation to individuals found to be employees.

The only question before the appellate courts in all of them was whether the testimony was sufficient to support the Boards in their findings that the relationship was that of master and servant. Department of Labor and Industry of Commonwealth v. Freeman, 55 Dauph. Co. Rep., Pa., 112, 116; Palumbo v. Unemployment Compensation Board of Review, supra.

Two of these cases related to orchestras. The facts distinguished these cases from the one before us. In the Steel Pier case the orchestra carried "Steel Pier Orchestra" as part of its name. The musicians were not free from control by the Amusement Company but were subject to control as to the time of performing and what they should play.

---

[8] Festi v. Proctor & Schwartz, Inc., 107 Pa.Super. 349, at 359, 163 A. 354; Brooks v. Buckley & Banks, 291 Pa. 1, 139 A. 379; 39 C.J. 1320.

In the Palumbo case the appellant, and not the orchestra leader, decided on the name of the orchestra, and designed and purchased the sign used by it; appellant directed the dress of the musicians, assigned them to their places, set times for rehearsals and "controlled the conduct and activities of the musicians in many respects." The musicians looked to appellant, and not the orchestra leader, for payment of wages. The appellant increased the size of the orchestra and the leader did not undertake to discharge any musician without first obtaining the permission of the appellant. On one occasion the appellant endeavored to discharge one of the musicians, failing not because of opposition by the leader but because of opposition by the local musician's union.

In holding that the testimony establishing the above facts was sufficient to support the findings of the Board that the musicians were employees of the appellant, the Superior Court of Pennsylvania quoted as authority Williams v. United States, D. C.N.D.Ill., E.D., 38 F.Supp. 536, which was subsequently reversed by the decision of the Circuit Court of Appeals, 7 Cir., 126 F.2d 129. Assuming that the Superior Court would be of the same opinion regardless of the reversal of the Williams case, the facts of the Palumbo case clearly distinguish it from the case now before us.

It is the belief of this Court that the conditions named in the Unemployment Compensation Act as necessary to prevent characterization of the services performed by an individual for remuneration as employment—namely, freedom from control or direction over the performance of the service, service either outside the usual course of business or performed outside of all places of business of the enterprise for which it is performed, and the individual customarily engaged in an independently established trade, occupation, profession, or business—do not differ from the test employed at common law in determination of status as that of employee or independent contractor. It is held by the Pennsylvania Statutory Court in Dauphin County that "the legislature, in enumerating in the Unemployment Compensation Act the conditions that negative employment status where services are performed by individuals for remuneration, did not intend that each of those conditions must exist one hundred percent nor to eliminate the status of independent contractor as distinguished from that of employee." See Department of Labor and Industry of Commonwealth v. Freeman, 55 Dauph. Co. Rep., Pa., 112, 116.

The Court has made an exhaustive survey of all authorities which exist in the Commonwealth of Pennsylvania pertaining to the questions which exist, and has found that all cases filed by the Bureau of Unemployment Compensation, in which it is claimed that employer is liable for the tax or contribution, have been instituted in the Court of Common Pleas of Dauphin County. The capital of the Commonwealth of Pennsylvania is located in Dauphin County, and all of the decisions of the Court of Dauphin County are in accord, and in each instance it has been held that in determining whether there is an independent contract under the Unemployment Compensation Statute, the same rules are to be applied as in any other case or as exist at common law. It has been provided by the legislature in the Commonwealth of Pennsylvania that the Court of Common Pleas of Dauphin County is created with jurisdiction throughout the state for the purpose of hearing and determining all suits, claims and demands whatsoever, at law and in equity, in which the Commonwealth may be the party plaintiff, for accounts, unpaid balances, unpaid liens, taxes, penalties, and all other causes of action, real, personal and mixed. [9]

In addition thereto, it has been held by the courts in Dauphin County that the conjunctive test does not have application for the reason that to make such an interpretation would be to, in effect, eliminate the relationship of independent contractor, and that it would be a violent presumption indeed to hold that such was the purpose or the intention of the legislature.

Since all of the decisions of the Court of Common Pleas in Dauphin County are

[9] Act of April 7, 1870, P.L. 57, § 1, as amended by the Act of May 25, 1937, P.L. 793, § 1, 17 P.S. § 255.

in accord and no appeals were filed by the Commonwealth of Pennsylvania to any of the higher appellate tribunals in the Commonwealth of Pennsylvania, this Court hereby accepts and recognizes such decisions as the law of the Commonwealth of Pennsylvania. [10]

It is, therefore, the opinion of the Court that the services performed by the "vaudeville entertainers" at the Carman Theatre for remuneration paid by the Management in the course of its enterprise did not constitute "employment" within the meaning and intent of the Pennsylvania Unemployment Compensation Law of December 5, 1936, P.L. of 1937, 2897, as amended, 43 P.S. § 753; and the remuneration paid such "vaudeville entertainers" for such services rendered did not constitute "wages" within the intent and meaning of the Pennsylvania Unemployment Compensation Law of December 5, 1936, P.L. of 1937, 2897, as amended, 43 P.S. § 753.

The order entered by the trial court is affirmed.

---

[10] Department of Labor and Industry of Commonwealth v. Freeman, 55 Dauph.Co.Rep., Pa., 112; Commonwealth v. Wysocki, 55 Dauph.Co.Rep., Pa., 413; Bayuk Cigars, Inc., et al. v. Chesnut, 57 Dauph.Co.Rep., Pa., 9; Commonwealth v. Adelphia Hotel Co., 52 Dauph.Co.Rep., Pa., 235.