# Pennsylvania Smelting & Refining Co. *v.* Duffin, Appellant.

Argued November 17, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*J. Webster Jones,* for appellant.

*Charles M. Solomon,* with him *Jerome J. Rothschild,* and *Fox, Rothschild, O'Brien & Frankel,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, January 3, 1950:

We are concerned here with the not unfamiliar problem of determining the party legally responsible for the negligence of a borrowed employe. The controlling test in such a case is well established; it is whether, in the particular service which the employe is engaged to perform, he continues liable to the direction and control of his general employer or becomes subject to that of the party to whom he is lent or hired. The criterion is not whether the borrowing employer

*in fact* exercises control but whether he has the *right* to exercise it: *Dunmire v. Fitzgerald,* 349 Pa. 511, 516, 37 A. 2d 596, 599; *Siidekum, Administrator, v. Animal Rescue League of Pittsburgh,* 353 Pa. 408, 413, 414, 45 A. 2d 59, 61; *McConnell v. Williams,* 361 Pa. 355, 360, 65 A. 2d 243, 245.

Plaintiff hired from defendant a crane, together with the operator, for the purpose of loading a pile of lead fumes* into a freight car. Defendant was a general contractor who was engaged also in the renting out of cranes with operators, charging a certain price per day for such rental; he testified that he would not rent a crane *without* an operator even if the customer so desired. The operators were on defendant's payroll, and he deducted from their wages the social security, federal income, and city wage taxes, as prescribed by law.

When the operator arrived with the crane at plaintiff's premises on this particular occasion a representative of plaintiff pointed out to him the location of the lead fumes and the gondola car into which they were to be loaded. During the course of the operation nobody on behalf of plaintiff gave him any instructions in regard to the operation of the crane or the manner in which the work was to be performed beyond calling to his attention the presence of a guy wire which he should "watch". This guy wire was one of several which served to keep in place a high smoke stack which was connected to the blast furnace. In the course of the operation the operator swung the boom of the crane in a direction where there was no safe clearance, with the result that it struck and broke the guy wire, causing the smoke stack to lean away from its moorings and necessitating its demolition and removal from

---

* Lead fumes have commercial value. They are particles of lead which settle in the form of dust or muck out of the smoke that arises from the process of smelting.

the premises. Plaintiff brought the present action against defendant for the damages which it thereby sustained. The learned trial judge, sitting without a jury, found as a fact that the breaking of the wire and the consequences that followed were due to the negligence of the operator in allowing the boom of the crane to strike the guy wire, and the court awarded to plaintiff damages for the loss of lead fumes during the several months which elapsed before the smoke stack could be replaced and during which period plaintiff was unable to capture the fumes from the smoke but had to allow them to discharge directly into the open air. Defendant appeals on the ground that in the operation of the crane the operator was the servant, not of defendant, but of plaintiff, and that therefore no cause of action existed.

It should be quite obvious that the facts admit of no interpretation other than that the operator of the crane remained at all times in the exclusive employ of defendant and that plaintiff not only had no right to control him in the manner in which he performed his work but in fact never asserted any such right nor sought to direct him other than merely to point out to him the job to be done. Where one is engaged in the business of renting out trucks, automobiles, cranes, or any other machine, and furnishes a driver or operator as part of the hiring, there is a factual presumption that the operator remains in the employ of his original master, since he is engaged in the very occupation for which he was originally so employed: *Thatcher v. Pierce,* 281 Pa. 16, 21, 125 A. 302, 303; *Blakey, Administratrix, v. Capanna,* 349 Pa. 144, 147, 36 A. 2d 789, 790; *Di-Gregorio, Administrator, v. Berg,* 359 Pa. 376, 379, 59 A. 2d 80, 81; Rest. Agency, §227, comment b. That initial presumption is here strengthened by all the circumstances attending the hiring and the operation of the crane. Defendant was in the regular business of rent-

ing cranes together with their operators, and he had the power not only in each instance to send an operator of his own choice but at any time at his pleasure to take him off the job and substitute another,—something which, of course, plaintiff had no right to do. The possession of such power is significant in the consideration of the right of control: *Funk v. Hawthorne,* 138 Fed. 2d 686, 688; see also *Healey v. Carey, Baxter & Kennedy, Inc.,* 144 Pa. Superior Ct. 500, 504, 19 A. 2d 852, 854; Rest. Agency, §227, comment c. Plaintiff was not in the business of operating cranes, which is an activity requiring technical skill on the part of the operator,—a fact that is likewise important in determining the question here involved, for it is inconceivable that the parties could have intended that plaintiff was to direct a specialist in a field in which it would have been wholly incompetent: *Festi v. Proctor & Schwartz,* 107 Pa. Superior Ct. 349, 357, 163 A. 354, 356; Rest. Agency, §227, comment c.

The chief contention of defendant seems to be based upon the fact (1) that defendant gave no instructions to the operator upon his setting off with the crane, and (2) that upon the operator's arrival plaintiff's representative pointed out to him the pile of lead fumes and the freight car into which they were to be loaded,—in other words, explained to him the job he was to perform. It is wholly immaterial that defendant gave no instructions to his operator since the controlling question is merely as to his *right* to give instructions; it is obvious that no instructions are called for every time a crane is rented as to the manner in which it is to be operated. Nor did the fact that plaintiff's representative pointed out to the operator the work to be done and the place where it was to be performed militate in the slightest against the continuance of the relationship of employe and employer between the operator and the defendant. It would be absurd to suppose that

a person hiring a truck, a car, or a machine of any kind, with its operator, would become the employer of the operator merely because of telling him what he wanted done,—for example, that a passenger engaging a taxicab would become the employer of the driver if he told him where he wished to be driven. The contrary has been held in an overwhelming multitude of cases. In *Scheer v. Melville*, 279 Pa. 401, 123 A. 853, the defendant supplied a motor truck and driver to haul certain rubber for the plaintiff; the plaintiff went along solely for the purpose of pointing out the material to be hauled; it was held that the driver remained the servant of the defendant so that the latter was liable for the driver's negligence. In *Thatcher v. Pierce*, 281 Pa. 16, 125 A. 302, the defendant hired out a motor truck and driver to a contractor; the contractor directed the time when and the place where the truck worked as well as the manner in which the load was received and discharged, but the court pointed out that the mechanical working of the truck remained in the exclusive control of the driver and for that operation the defendant was responsible. In *Funston v. Ingenito*, 282 Pa. 124, 127 A. 470, the defendant hired out an automobile with a chauffeur to a person who directed the latter where he was to go; it was held that the chauffeur remained the servant of the defendant and the defendant was therefore responsible for his negligent driving. In *Lang v. Hanlon*, 302 Pa. 173, 153 A. 143, it was held, in a similar case, that if the bailee of a car had no authority over the driver except to direct him where to drive, the bailor was liable for the driver's negligence. In *Blakey, Administratrix, v. Capanna*, 349 Pa. 144, 36 A. 2d 789, a truck with a driver was furnished for the purpose of doing some hauling; the party engaging it determined where the truck was to go and the load it was to carry but had nothing to do with its operation; it was held that the concern hiring the truck was not legally responsible for its negligent

operation. To the same effect is *DiGregorio, Administrator, v. Berg,* 359 Pa. 376, 59 A. 2d 80, and a large number of cases in the Superior Court: *Matlack v. Chalfant,* 69 Pa. Superior Ct. 49; *Wright v. A. & S. Wilson Co.,* 83 Pa. Superior Ct. 487; *Connor v. McCandless,* 84 Pa. Superior Ct. 307; *Lewis v. S. M. Byers Motor Co.,* 102 Pa. Superior Ct. 434, 156 A. 899; *Festi v. Proctor & Schwartz,* 107 Pa. Superior Ct. 349, 163 A. 354; *Healey v. Carey, Baxter & Kennedy, Inc.,* 144 Pa. Superior Ct. 500, 19 A. 2d 852. So likewise in the United States Supreme Court: *The Standard Oil Co. v. Anderson,* 212 U. S. 215; *George A. Fuller Co. v. McCloskey,* 228 U. S. 194. See also *Funk v. Hawthorne,* 138 Fed. 2d 686, where the Court of Appeals for the Third Circuit followed the Pennsylvania authorities. It is true, of course, that if the person hiring a truck or machine with its driver or operator interferes with its operation and assumes to direct and control the operator or driver a different conclusion would necessarily follow: This differentiation explains such cases as *Robson v. Martin,* 291 Pa. 426, 140 A. 339; *Bojarski v. M. F. Howlett, Inc.,* 291 Pa. 485, 140 A. 544; *McGrath v. E. G. Budd Manufacturing Co.,* 348 Pa. 619, 36 A. 2d 303. In the present case no such assumption by plaintiff of direction and control occurred. As far as plaintiff's telling the operator to watch the guy wire is concerned this was nothing more than for a person engaging a taxicab to tell the driver to be careful not to run over anyone.

Since there was no evidence which would warrant a conclusion that the status of the operator of the crane was transferred from that of an employe of defendant to that of an employe of plaintiff, the court below properly entered judgment for plaintiff upon finding that the damages sustained by it were caused by the crane operator's negligence.

Judgment affirmed.