98 So.2d 665

**E. B. RIDGEWAY**

v.

**SULLIVAN–LONG & HAGERTY, Inc.**

6 Div. 379.

Court of Appeals of Alabama.

Oct. 22, 1957.

Rehearing Denied Nov. 26, 1957.

Corretti & Newsom, Birmingham, for appellant.

**342**

Jackson, Rives, Pettus & Peterson, Birmingham, for appellee.

HARWOOD, Presiding Judge.

In the proceedings below the plaintiff, appellant here, had claimed damages for the negligent operation of a bulldozer on the property of the plaintiff, resulting in injuries to a foundation wall of plaintiff's house.

The defendant's demurrer to the complaint being overruled, a plea in short by consent, etc., was interposed.

At the conclusion of the trial the court gave to the jury the general charge, without hypothesis, at the defendant's request.

While the appellant, plaintiff below, has assigned and argued a number of assign-ments of error, an analysis of all such assignments discloses that they must stand, or fall, upon the question of whether the operator of the bulldozer was, at the time of the alleged injury, a "borrowed servant" of the appellant.

The evidence presented by the plaintiff tended to show that in 1956 he was building a house in Bessemer, Alabama.

The plaintiff for over fourteen years has been regularly employed at the Alabama Cast Iron Pipe Co., but had built two or three houses "on the side." No sub-contracts were let in the process, the plaintiff purchasing all materials, and hiring labor as needed. Plaintiff paid one of the laborers extra money to act as "lead" man, to "see after" the work.

In the course of the construction the plaintiff had hired from the defendant a front and loader and operator to excavate the cellar.

This machine, which is a dirt mover, is variously referred to by witnesses as a bull-dozer, a pay loader, or a front end loader.

A concrete block wall about 8 feet in height was built as a foundation wall, also serving as a wall for the cellar.

In constructing this wall a space from one to two feet wide, and some eight feet deep, was left in front of the wall.

When the house had reached the stage where the framing and rafters were up, the subflooring in, and a roof on, the plaintiff decided to fill in this space.

According to the plaintiff he called Mr. Thomason, an employee of the defendant, at his home, and told him he had some more work to do on his house, that he wanted dirt pushed into the space in front of the foundation wall, and the back yard leveled, and he wanted a pay loader, and perhaps a truck to haul more dirt if needed. Thomason asked if plaintiff would be at the premises, and plaintiff said he could be there only on Saturday. Thomason replied they did not work on Saturday, and they agreed for

the pay loader to be sent on Monday. The plaintiff requested the same operator that had worked on the premises before, and Thomason said he thought this operator was free and could be sent. The plaintiff then told Thomason that his men doing the carpentry work would be at the premises to tell the operator what he wanted done.

It was agreed that the plaintiff was to pay $11.50 per hour for the pay loader and operator for such period as he might need the machine. The operator was a regular employee of the defendant, and the fuel for the pay loader was furnished by the defendant.

The pay loader was sent to plaintiff's premises by the defendant on a Monday morning around 7:30. Mr. Lattimer, defendant's employee, arrived about the same time.

Mr. Lattimer testified he had received no instructions as to what work was to be done prior to his arrival, but that upon his arrival he was told by Mr. Gerald Ridgeway, a brother of plaintiff, and Mr. Marlow, both employees of the plaintiff, that they wanted him to fill the space in front of the foundation wall, showing him the dirt they wanted put into the space. At their instructions he also dumped some black dirt near the space, and leveled up the back yard.

Later in the afternoon, after Mr. Lattimer had finished his work with the pay loader it was discovered that the concrete block wall in front of which he had dumped earth was severly cracked, to the extent that it bulged inwardly some two inches.

Witnesses for the plaintiff testified that after the discovery of the injury to the wall, and on the afternoon of the day that Lattimer had worked, they observed bulldozer tracks in the soft dirt of the fill against the wall, and that these tracks ran parallel with the wall and within six inches thereof.

It was plaintiff's contention that the weight of the pay loader, on the soft dirt of the fill, some 16,000 pounds, was the cause of the wall cracking.

Defendant's witness, Mr. Lattimer, testified he had not driven the pay loader on the soft dirt at any time, and in his opinion had he done so the pay loader would have fallen into the cellar.

Mr. Lattimer also testified that he had been employed by the defendant as a heavy machine operator for some eight or nine years.

On cross-examination Mr. Lattimer testified that he did note operate the particular machine sent to plaintiff all the time, but that other employees sometimes operated it; that he might operate one kind of machine one day, and a different kind the next day.

The defendant also introduced evidence to the effect that the scoop on the front of the pay loader was a "great deal" wider than the tracks, and that a guard on the side extended out some two inches, and that the machine could not have been driven within six inches of the wall. A catalogue picturing the pay loader was received in evidence.

Evidence was presented by the defendant to the effect that the plaintiff had not talked to Mr. Thomason at all in hiring the pay loader, as Mr. Thomason was in a hospital at the time the plaintiff claims to have called him.

J. P. Colvert, an employee of the defendant, testified he occupied Mr. Thomason's desk at the time he was in the hospital, and he had taken the call from the plaintiff. The plaintiff had merely stated he wanted the same machine and operator he had before, and did not state what work he wanted done, but had said that he would have somebody at the house to supervise the work.

As to whether one who is the servant of one master has become specially the servant of another is ordinarily a question of fact. If only one inference can reasonably be drawn from the facts, then the court will determine the status, but if reasonable men may fairly come to different conclusions respecting the inference to be drawn from the facts, the question is

one for the jury. 2 Mechem on Agency 1447, Section 1864.

■ Numerous tests have been set forth in the cases as an aid in determining the ultimate fact of agency. The tests furnish assistance, but no definite answer since proposed in relation to the facts of a particular case.

"Control" is a factor often mentioned. Does the servant continue liable to the direction and control of his original master, or is that control and direction vested in another? See Standard Oil Co. v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480; St. Louis, I. M. & S. Ry. Co. v. Yates, 111 Ark. 486, 165 S.W. 282; Higgins v. Western Union Tel. Co., 156 N.Y. 75, 50 N.E. 500.

Another question sometimes in effect propounded is, does the special employer have the right to exercise control regardless of whether he does so. See Corbin v. American Mills Co., 27 Conn. 274, 275; Pease v. Gardner, 113 Me. 264, 93 A. 550; or has the general master resigned full control of the servant for the time being. See Quinby v. Estey, 221 Mass. 56, 108 N.E. 908.

In Hiller v. Goodwin, 258 Ala. 700, 65 So.2d 152, 156, our Supreme Court has stated:

"In determining whether the general master of a servant or one to whom the servant has been loaned or hired is responsible for the servant's acts he is to be deemed the master who has the supreme choice, control and direction of the servant and whose will the servant represents not merely in the ultimate result of his work, but in all its details."

And in Martin v. Anniston Foundry Co., 259 Ala. 633, 68 So.2d 323, 327, the following observation is made:

"In cases of this nature, consideration must be given to the character of the service to be rendered, the duration of employment, and the one who is paying the employee. These considerations, however, are merely aids in determining the relation and do not necessarily determine the relationship. They are to be applied only in those cases where the evidence does not clearly establish who is the employer. The true criterion is the exercise of power to control the employee at the time of the commission of the act. McGrath v. Edward G. Budd Mfg. Co., supra [348 Pa. 619, 36 A.2d 303], and authorities there cited."

■ It is the reserved right of control rather than its actual exercise that furnishes the true test of relationship. Tuscaloosa Vencer Co. v. Martin, 233 Ala. 567, 172 So. 608.

In United States Steel Corp. v. Mathews, 261 Ala. 120, 73 So.2d 239, 242, the caution is thrown out that:

"* * * there must be careful distinguishing 'between authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the work furnished is part of a larger undertaking.' Standard Oil Co. v. Anderson, 212 U. S. 215, 29 S.Ct. 252, 254, 53 L.Ed. 480. And the fact that the borrower gives information and directions to the servant as to details of work or the manner of doing it does not make this general servant of the employer the servant of such other person. O'Brien v. Rindskopf, 334 Mo. 1233, 70 S.W. 2d 1085; 57 C.J.S. Master and Servant § 566."

In the present case the character of the service to be rendered by the defendant required the skill of a specialist in the operation of heavy machinery; the operator of the machine was paid by the defendant; the employment was for a limited time, on an hourly basis, and in fact the work was completed in approximately eight hours.

Comment c to Section 227 of American Law Institute's Restatement of the Law of Agency is as follows:

"c. Factors to be considered. A continuation of the general employment is indicated by the facts that the general employer may at any time substitute another servant, that the time of employment is short, and that the lent servant has the skill of a specialist.

"A continuance of the general employment is also indicated in the operation of a machine where the general employer rents the machine and a servant to operate it, particularly if the instrumentality is of considerable value. Normally, the general employer expects the employee to protect his interests in the use of the instrumentality and these may be divergent from the interests of the temporary employer. If the servant is expected only to give results called for by the temporary employer and to use the instrumentality as the servant would expect his general employer would desire, the original service continues. Upon this question, the fact that the general employer is in the business of renting machines and men is relevant, since in such case there is more likely to be an intent to retain control over the instrumentality."

Still another legal principle must enter into a consideration of the propriety of court's action in giving the peremptory charge in defendant's favor.

■ The plaintiff proved that the operator was the employee of the defendant. In fact the existence of this status is uncontradicted. Such evidence raises a presumption that the relationship continued. It could be overcome only by evidence to the contrary which is strong, clear and uncontradicted. Aetna Explosives Co. **v.** Schaeffer, 209 Ala. 77, 95 So. 351.

To this same effect, but more specifically applicable to the present case is the following statement by the Supreme Court of Pennsylvania in Pennsylvania Smelting and Refining Co. v. Duffin, 363 Pa. 564, 70 A.2d 270, 271, 17 A.L.R.2d 1384:

"Where one is engaged in the business of renting out trucks, automobiles, cranes, or any other machine, and furnishes a driver or operator as part of the hiring, there is a factual presumption that the operator remains in the employ of his original master, since he is engaged in the very occupation for which he was originally so employed. Thatcher v. Pierce, 281 Pa. 16, 21, 125 A. 302, 303; Blakey v. Capanna, 349 Pa. 144, 147, 36 A.2d 789, 790; DiGregorio v. Berg, 359 Pa. 376, 379, 59 A.2d 80, 81; Rest.Agency, § 227 comment b. That initial presumption is here strengthened by all the circumstances attending the hiring and the operation of the crane. Defendant was in the regular business of renting cranes together with their operators, and he had the power not only in each instance to send an operator of his own choice but at any time at his pleasure to take him off the job and substitute another,—something which, of course, plaintiff had no right to do. The possession of such power is significant in the consideration of the right of control. Funk v. Hawthorne, 3 Cir., 138 F.2d 686, 688; see also Healey v. Carey, Baxter & Kennedy, Inc., 144 Pa. Super. 500, 504, 19 A.2d 852, 854; Rest.Agency, § 227, comment c. Plaintiff was not in the business of operating cranes, which is an activity requiring technical skill on the part of the operator,—a fact that is likewise important in determining the question here involved, for it is inconceivable that the parties could have intended that plaintiff was to direct a specialist in a field in which it would have been wholly incompetent. Festi v. Proctor & Schwartz, 107 Pa.Super. 349, 357, 163 A. 354, 356; Rest.Agency, § 227, comment c."

We are not here dealing with the weight of the evidence, but with the propriety of the court's action in giving the affirmative charge in defendant's favor.

**346**

In this jurisdiction there need be only a scintilla of evidence to require reference of the issue to the jury—a mere "gleam," "glimmer," "spark," "the 'smallest trace.'" Barber v. Stephenson, 260 Ala. 151, 69 So.2d 251, 256.

From the evidence submitted, and the legal principles applicable as above set forth, we are clear to the conclusion that the evidence, and reasonable inferences therefrom, was of such probative force as to require the submission of the issue to the jury to determine as to whether Lattimer was the servant of the plaintiff, or of his general master, the defendant, at the time of the alleged injury.

Reversed and remanded.

### On Motion for Rehearing

In his brief in support of appellee's application for rehearing, counsel complains that in our opinion we did not show that the plaintiff below testified that he had left instructions with his brother, Mr. Gerald Ridgeway, and with Mr. Wood, as to the work to be done with the pay loader. Nor did we show specifically that Mr. Gerald Ridgeway testified that Mr. Wood had the entire supervision of everyone on the job at the house being erected by the appellant.

We think that in our opinion conclusions to be drawn from the effect of the above facts were clearly set forth, though the facts themselves were not detailed. However, in deference to counsel we extend this opinion to include the details.

We cannot see that they can operate in any material way to alter our conclusions, which were reached upon facts set forth, which in substance contained the same ultimate facts as shown in the testimony of the plaintiff below, and of Mr. Gerald Ridgeway, as above shown.

Application overruled.