ROBERT JOHN SCHOMP AND BOARD OF REVIEW (STATE OF NEW JERSEY UNEMPLOYMENT COMPENSATION COMMISSION), RESPONDENTS, v. THE FULLER BRUSH COMPANY, PROSECUTOR.

Argued January 17, 1940—Decided May 2, 1940.

Before BROGAN, CHIEF JUSTICE, and Justices DONGES and PORTER.

For the respondents, *Charles A. Malloy* (*Herman D. Ringle,* of counsel).

For the prosecutor, *John A. Laird.*

BROGAN, CHIEF JUSTICE. The issue here is whether "employment" as defined by the Unemployment Compensation law (*R. S.* 43:21-19, *sub.* i-6) resulted or existed under the facts and circumstances hereinafter set out. Schomp, the claimant, had been engaged in selling the merchandise of the Fuller Brush Company, prosecutor of this writ. The merchandise was supplied by the company to Schomp for cash or on a guaranteed credit plan. The Unemployment Compensation Commission of this state concluded that the claimant, Schomp, was an employe of the Fuller Brush Company and that as such he was entitled to unemployment compensation fixed by that statute. A writ of *certiorari* was allowed to review this determination and the return brings before us certain depositions concerning the incidents of the relationship between these parties as well as their contract, dated June 28th, 1938. In the contract Schomp is designated as a "dealer." The agreement provides that the dealer is granted "the right to purchase the company's merchandise and resell the same" in a particular territory to be fixed; that the company agrees to sell to the dealer, at wholesale prices, at its distributing station, such merchandise as the dealer may desire; that the dealer may not obligate the company, and that the company has no interest "in the dealer's accounts with his customers." No retail selling price is fixed in the contract though it appears in the depositions that the dealer's profit on "regular items" amounts to thirty-three and one-third per cent. There is a provision for the return of any unsold merchandise within thirty days after the termination of the agreement and also that the agreement may be terminated by either upon written notice.

Employment is defined by the statute, *supra* (section 19, paragraph i-1) as follows:

" 'Employment' means service, including service in interstate commerce, performed for remuneration or under any contract of hire, written or oral, express or implied."

Subdivision i-6 of this same paragraph must at the same time be considered in conjunction with the legislative definition of the term. It reads:

"Services performed by an individual for remuneration shall be deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the commission that

"(A) such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(B) that such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

"(C) such individual is customarily engaged in an independently established trade, occupation, profession or business."

Depositions were taken to expose the circumstances and conditions surrounding the service rendered by Schomp as "dealer." It will be noticed that the three (A, B and C) conditions that would negative the relationship of the statutory "employment" must be concomitant, must all co-exist together and the failure of one necessarily results in the relationship being one of "employment."

The Board of Review held that the test set up by prerequisite "C" had not been met and concluded that the claimant was an employe.

The prosecutor's argument in the main is that the contract setting out the mutual rights and privileges established beyond peradventure that the plaintiff was an independent contractor; that he was free from control of the company; that the relationship of employer and employee did not exist; that services were not "performed for remuneration;" and that the parties were respectively vendor and vendee.

The statute, under the section last quoted (*i. e.,* subdivision A), is authority for an investigation of the relationship by looking to the contract and also to the incidents and circumstances surrounding the relationship so that it may be determined what the relationship was *in fact.* The relationship therefore must be viewed and determined from the statutory viewpoint alone (particularly the pertinent parts of section 19) and we must, if reasonably it may be done, give effect to it.

In the statute (subsection 6) the term "employment" is more or less affirmatively defined and taken in conjunction with the delimitations (A, B and C) it is wholly defined. In the subsection immediately succeeding, the same term may be said to be delineated and defined in a negative way. Directing our attention to the preceding subsection (6), it is reasonably clear that the legislature, in its affirmative definition of employment, ordained that all services performed by an individual for remuneration should be deemed to be employment for the purposes of unemployment compensation unless the three mentioned concomitant conditions appear. Each claim under this statute must, we think, be adjudged and determined on the facts and circumstances governing the relationship. We do not attempt to state a formula which would resolve the issue as to when a claimant would or would not be entitled to the benefits of this statute. It is an impossible task to set down a standard or norm, the application of which would automatically determine every case. It defies formularization.

The first disputed question is whether the claimant, Schomp, was "free from control" of the prosecutor, under the contract and *in fact.* Under the contract he merely seems to be; in reality he is not. For instance, he is not free to sell where he will; he must operate in a given area; he must sell a given amount of merchandise or he will be dismissed. True, it is a subtle dismissal in this that the "dealer" will be advised by a manager, as it appears in the depositions, that he "isn't fitted for this work and he would be better off to find something else," &c.; that he would be advised to "turn in your case" and this, if the dealer did not comply, would be followed by what is called a "termination notice" which

meant that no merchandise would, after a given date, be shipped to the "dealer" who does not accomplish the company's unstated minimum of sales. This, we think, is complete control in fact—even if by the mechanics of written contract it seems remote. It is urged that a "dealer" under the agreement is at law an independent contractor. We do not think it necessary to enter into a detailed discussion of this question. It is clear that the company even in its contract retained the right to control the dealer. True it is that in form the agreement has the aspects of a vendor and vendee arrangement. In fact, however, Schomp was a salesman who paid for the merchandise by cash in advance or by a debiting of his letter of credit and his services produced remuneration on a commission basis. Furthermore, as evidence of the "control" in fact that was exercised it is not disputed that the branch managers of the company instructed the dealers in the method of salesmanship desired by the company; that these managers also personally demonstrated this method in the field—these and similar instructions in weekly papers, &c., show an exercise of continuous control which the status of independent contractor does not tolerate. *Cf. Errickson* v. *Schwiers,* 108 *N. J. L.* 481, 483. We conclude that the company always had the right to control and in fact exercised it.

The next subdivision of subsection 6 of the statute (B) is in the alternative and it seems to be conceded that the service in this instance was performed outside "of all the places of business of enterprise for which such service is performed." We pass on therefore to the final subdivision (C). The determination below is to the effect that the proofs show that the claimant here was not customarily engaged in an independently established trade, occupation or business. We think that the conclusion of the board of review was justified since it appears that when the agreement between these parties was terminated the claimant joined the ranks of the unemployed, and this issue on that phase of this particular case was, we think, correctly determined. We do not deem it advisable at this juncture to attempt any comprehensive exposition of what was intended by this section of the statute. We are

content to say that the facts of this case establish that the claimant was not customarily engaged in an independently established business, trade or occupation.

The judgment under review will be affirmed, and the writ dismissed.