STEEL PIER AMUSEMENT COMPANY ET AL., PROSECU-
TORS, v. NEW JERSEY UNEMPLOYMENT COMPENSA-
TION COMMISSION ET AL., DEFENDANTS.

Argued October 2, 1940—Decided September 16, 1941.

Before Justices CASE, DONGES and HEHER.

For the prosecutor, *Thompson & Lloyd* and *Herbert Horn.*

For the defendants, *Clarence F. McGovern.*

The opinion of the court was delivered by

DONGES, J.   Prosecutor Steel Pier Amusement Company
in 1937 and 1938 operated an amusement pier in Atlantic
City.   In 1939, prosecutor Atlantic City Steel Pier Company
took over the operation of the pier, and subsequently Steel
Pier Amusement Company was dissolved.   This writ was
allowed to review a finding of the Board of Review of the
New Jersey Unemployment Compensation Commission that
during a part of the years 1937 and 1938 the defendant
Bandiera was in the employ of prosecutor Steel Pier Amuse-
ment Company.

During portions of 1937 and 1938, one Bartha was a
musician and leader of an orchestra which played on prosecu-
tor's amusement pier.   In his orchestra was defendant Ban-
diera, admittedly hired by Bartha and playing with the
orchestra during 1937 and 1938 on the prosecutor's pier and
elsewhere.   The orchestra was known as "Alex Bartha and
His Steel Pier Orchestra."   Steel Pier Amusement Company

entered into contracts with Bartha during the years 1937 and 1938, the years involved in this case. On June 19th, 1937, Bartha, of the first part, and Steel Pier Amusement Company of the second part, agreed:

"The party of the first part hereby agrees to furnish (11) eleven musicians, members of Local Union No. 661, of the American Federation of Musicians *as their agent,* to the party of the second part for the sum of $640 per week being wages for engagement at the Steel Pier for a period of twelve weeks starting June 19th.

"Orchestra is to include a vocalist in its personnel.

"Orchestra is to play four hours daily.

"The above contract is subject to the rules of Local Union No. 661 of the American Federation of Musicians.

"The Local reserves the right to collect wages at any time."

On May 5th, 1938, a contract was entered into providing:

"The party of the first is to furnish the party of the second part his twelve piece orchestra, known professionaly as Alex Bartha and His Steel Pier Orchestra for a period of twelve weeks beginning June 18th, 1938, at the Steel Pier, Atlantic City, N. J.

"The orchestra is to play twenty-eight hours per week at a cost of $625 per week.

"Payment for services of orchestra to be made weekly during the term of this contract.

"This contract subject to the rules and regulations of Local Union 661 of the American Federation of Musicians."

The orchestra performed during the periods stated in the contracts; the compensation therein stated was paid; such compensation included the union rate of wages for both the leader and the musicians. It was testified that Bartha received $75 per week and each musician received $50 per week for services on the pier, this being the minimum union wage. The musicians made unemployment compensation insurance payments to Bartha and Bartha made payments as employer until he received a letter from counsel for the Unemployment Compensation Commission to the effect that Bartha and the musicians of the orchestra were employees of the Steel Pier.

The question presented in this case is: Was the defendant Bandiera, during the time that he performed services as a musician on the Steel Pier, an employee of the Steel Pier within the meaning of *R. S.* 43:21-19, subsection (i) (6), or was he during the time he performed such services an employee of Bartha, the orchestra leader?

Admittedly Steel Pier is an employing unit subject to the Unemployment Compensation Law as to employees engaged by it for other services, but it insists that Bandiera was not its employee but was an employee of Bartha.

In *Schomp* v. *The Fuller Brush Co.,* 124 *N. J. L.* 487; *affirmed,* 126 *Id.* 368, Chief Justice Brogan, speaking for this court, said:

"The statute, under the section last quoted (*i. e.,* subdivision (A)), is authority for an investigation of the relationship by looking to the contract and also to the incidents and circumstances surrounding the relationship so that it may be determined what the relationship was *in fact.* The relationship therefore must be viewed and determined from the statutory viewpoint alone (particularly the pertinent parts of section 19) and we must, if reasonably it may be done, give effect to it."

The pertinent provision of the statute (*R. S.* 43:21-19 (i) (6)) is as follows:

"Services performed by an individual for remuneration shall be deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the commission that

"(A) such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(B) such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

"(C) such individual is customarily engaged in an independently established trade, occupation, profession or business."

It is undisputed that the services of Bandiera and the other musicians were services performed for remuneration within the statute.

(A) A reading of the testimony leaves no doubt that the musicians were not free from control or direction of the Steel Pier. They were subject to its control as to the time of performing, and likewise as to what they should play, if the Steel Pier expressed any such desire. They did in fact play dance music or accompaniments as directed. It is clear that Bartha was merely agent for the hiring of the men and was, for all practical purposes, a foreman. The musicians accommodated themselves to the needs and demands of the Steel Pier, and in fact took orders from and were under the control of the Steel Pier.

(B) There is no question that the services of Bandiera and the other musicians were performed on the Steel Pier, prosecutor's place of business, and in the usual course of the business for which such service is performed.

(C) During the period alleged to be covered by employment by prosecutor, the musicians of the "Steel Pier Orchestra" devoted themselves to the work for the benefit of the Pier. It does not appear that Bandiera was customarily engaged, during the period in question, in an "independently established trade, occupation, profession or business," but, on the contrary, was engaged by the Steel Pier, through Bartha as agent, for a period of service for it. Viewed in the light of actuality, the situation did not differ from the engagement of a group of painters for a specified time or a group of ushers, merely because the persons involved were musicians.

From all of the facts and circumstances, viewed in the light of the statutory provisions, we conclude that the determination of the Board of Review was proper.

The writ is discharged, with costs.