660 A.2d 1231

JACK KOZA, T/A TRIESTE, PETITIONER–APPELLANT, v. NEW JERSEY DEPARTMENT OF LABOR, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted May 22, 1995—Decided July 10, 1995.

Before Judges DREIER and VILLANUEVA.

*Edward J. Martz,* attorney for appellant (*Ronald L. Lueddeke,* local counsel; *Mr. Martz* and *Mr. Lueddeke,* on the brief).

*Deborah T. Poritz,* Attorney General of New Jersey, attorney for respondent (*Lewis A. Scheindlin,* Deputy Attorney General, of counsel; *Jed M. Milstein,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

VILLANUEVA, J.A.D.

Petitioner, Jack Koza, appeals from the Final Decision of respondent, the Department of Labor (the Department), assessing him over $32,000 in unpaid unemployment and disability contributions, including interest and penalties. Petitioner, a musician who performed solo and with various other musicians under the trade name Trieste, did not pay unemployment and disability taxes for the other musicians with whom he performed because he considered them independent contractors rather than employees. One member of the group, Kenneth Schulte, filed a disability claim which he later withdrew, but the Department investigated the matter and determined that petitioner failed to deduct unemployment and disability taxes from the payments made to members of the group. We reverse and remand for further proceedings.

The central issue on appeal is whether the musicians with whom petitioner performed were employees or independent contractors as defined by *N.J.S.A.* 43:21–19(i)(6)(A)(B)(C) (the ABC test). Petitioner argues that: (1) the Department's actions constituted a new rule which is invalid because the agency failed to comply with the procedures for promulgating new rules under the Administrative Procedure Act; (2) the ABC test and the Department's appeal procedure violates constitutional due process guarantees; and (3) the fact-findings and credibility determinations of the administrative law judge (ALJ) were unsupported by sufficient credible evidence in the record.

On December 26, 1989, the Department determined through a field audit that petitioner was liable for $11,558.13 in unpaid

unemployment and disability taxes for the years 1985–89 based on payments made by petitioner to musicians who performed in the group known as Trieste. The Department informed petitioner of the assessment in a letter dated January 30, 1990. After a meeting with petitioner, one of the auditors determined that, under the ABC test, the musicians were employees of petitioner and thus petitioner was liable for unemployment and disability contributions on their behalf. In letters dated September 11 and September 18, 1990, John Maroney, the Department's chief auditor, affirmed petitioner's liability and increased his assessment by $4,345.74. The sum now demanded exceeds $32,000, with more than half of that representing interest and penalties.

The matter was transferred as a contested case to the Office of Administrative Law (OAL). At the OAL hearing, petitioner testified as to how his business operated. He estimated that about twenty to twenty-five percent of his time was spent performing as a guitarist, with the rest of his time spent studying, writing, and teaching music, as well as recording and rehearsing. He also telephoned club owners and promoters to procure employment, and he advertised his services.

Petitioner had an exclusive agreement with an agent who would book engagements for Trieste. When the agent obtained a job, he would tell petitioner how many musicians the customer, or "end purchaser," wanted, and petitioner would then call various musicians and ask them if they were available to play with Trieste on the job. Sometimes petitioner was the sole performer, and other times the group included between two and ten musicians.

After petitioner received payment for a performance, he would deduct expenses and a 15% commission for the booking agent, and then would divide the balance of the money equally between himself and the other musicians. Musicians were always paid by the job, not on an hourly basis. Some customers had a rulebook that each of the musicians was required to sign, and petitioner was generally designated the "leader" when he signed the rulebook. Petitioner testified, however, that, musically, he did not function as

a leader of the group. Petitioner explained that if there was music which required a lead guitar, he would be the lead guitar, but if in another piece there was a lead keyboard, the keyboard player would serve that function. He did not play "out front," and he provided no music, bandstands, or individual publicity.

Although petitioner testified that all of the musicians worked in other groups in addition to Trieste, and that Kenneth Schulte in particular was playing piano in a bar and doing studio recording work during 1988, under cross-examination it emerged that Schulte's gross income on his 1988 tax returns was earned entirely from his work with Trieste. However, at the informal hearing with redetermination auditor George Ohland, petitioner submitted resumes of two performers and a newspaper which contained musicians' advertisements. According to petitioner, all the musicians filled out their own Schedule C forms with their federal income tax returns, he did not provide them with any medical benefits or liability insurance and he issued Federal 1099 forms rather than W–2 forms.

Although petitioner stated that he required the musicians whom he hired to sign an agreement specifying that they were independent contractors rather than employees, petitioner apparently did not start using the written agreements until after he was audited.

The ALJ found that petitioner testified "incredibly" when he denied leading the group or telling the other musicians how to play, and when he asserted that the group in fact had no leader. He found that petitioner was the leader of the 24 musicians identified as employees of Trieste, they were subject to his control and direction and he failed to satisfy all three prongs of the ABC test; thus, he was their employer for the purposes of *N.J.S.A.* 43:21–19. The ALJ recommended that the Department's assessment against petitioner be upheld. The Commissioner of the Department (Commissioner) adopted the fact-findings and the legal conclusions of the ALJ as to parts A and C of the ABC test, but found it "unnecessary to address whether the [ALJ] correctly determined that petitioner did not satisfy prong B of the test."

The Commissioner affirmed the Department's unemployment and disability assessments against petitioner.

On appeal, petitioner contends that he satisfied the ABC test because (a) he had no control over the other musicians' performance of their services; (b) they did not perform their services at his principal place of business, which was his home; and (c) the musicians had their own independently-established businesses.

■ Part A of the ABC test requires a showing, if one is to be deemed an independent contractor, that the worker was not subject to control or direction in the performance of his or her services. *N.J.S.A.* 43:21–19(i)(6)(A). The worker must show not only that an employer has not exercised control, but also that the employer has not reserved the right to control his or her performance.

To summarize the unimpeached testimony, petitioner contended that (1) while he or an agent would obtain bookings, sometimes other members of the group also obtained bookings; (2) even though petitioner was sometimes the leader, the musicians were free to work when and where they chose, including for other bands; (3) the group, when assembled, determined its own arrangements by collective decisions and there was no leader; (4) any member who could not perform was free to obtain his or her own replacement; (5) petitioner was paid for each performance either by check or in cash, deducted the agent's commission and any expenses for equipment and other items, and then divided the remainder equally among all the performers, and (6) any practice sessions were unpaid and were held at various locations agreeable to the group, but not at petitioner's home because he had small children there; (7) the performers were required to comply with the customer's rules, not petitioner's; (8) petitioner provided no training, uniforms, instruments, or supplies that the other musicians would use in their performance, although he did rent sound and lighting equipment if not provided by the customer, but the expenses were shared equally by those participating on that particular job; (9) petitioner paid the musicians, but did not

provide any fringe benefits or insurance; (10) although petitioner performed with the other musicians and was responsible for procuring most of their customers, he did not supervise their performances, requiring only that they (or their substitutes) perform to the customer's satisfaction.

The only reported decision in New Jersey applying the ABC test to musicians is *Steel Pier Amusement Co. v. Unemployment Compensation Com.*, 127 *N.J.L.* 154, 157, 21 *A.*2d 767 (Sup.Ct. 1941). The Supreme Court held that the Steel Pier Company controlled the time and nature of the orchestra's performances, and that the bandleader was · merely the hiring agent of the musicians. The court compared the bandleader's function to that of "foreman." *Ibid.* Although other states have reached opposite conclusions, there were other factors involved. Each case is fact-sensitive.

■ The facts herein indicate that petitioner was the equivalent of an agent or foreman for the benefit of the group, rather than the employer of the group members. This analogy can be extended to show that all of the members, including petitioner, were independent contractors and that all that petitioner did with respect to this group was to receive the pay for all of the individuals and then divide it equally. In reality, this is a group of independent contractors and not an employer with employees. We question whether the ABC test· is properly applied to every group effort where the members of the group share the compensation received. For example, if three bricklayers approach a builder and offer their collective services to build a wall, does the one who. receives the total payment become the employer of the other two?

The ALJ found that petitioner, "who was often an incredible witness," had failed to prove that Trieste's musicians were free from his control or direction over their performance. The ALJ's discounting those portions of petitioner's testimony that failed to comport with his generalized notions about musical performances was arbitrary, apparently based upon his subjective misunder-

standing of the music business.  Not only do some musical groups play without a leader, but even some orchestras do.  For example, the Orpheus Chamber Orchestra and many other chamber orchestras, as well as most chamber ensembles, perform without leaders.

There is no reason why the ALJ should not have accepted petitioner's account of the way Trieste functions, *i.e.,* Trieste's musicians were not subject to petitioner's control under the approach adopted by the courts in *Trauma Nurses v. Board of Review,* 242 *N.J.Super.* 135, 143–47, 576 *A.*2d 285 (App.Div.1990) and *Carpet Remnant Warehouse v. Dept. of Labor,* 125 *N.J.* 567, 582–84, 593 *A.*2d 1177 (1991).

As to part B, *N.J.S.A.* 43:21–19(i)(6)(B), the Commissioner focused on part 1 of what is an alternative test (usual course of business), and did not focus on the second part which permits a showing that the service was "performed outside of all of the places of business of the enterprise."  In *Carpet Remnant Warehouse, supra,* 125 *N.J.* at 592, 593 *A.*2d 1177, the Supreme Court interpreted this section as referring to physical places of business, and not places where this service was eventually performed. Petitioner's only place of business would be his home where 75% of his other music-related activities were performed, but no substantial activities involving other members of the group occurred at petitioner's home.  Notwithstanding the Commissioner's finding, both prongs (although one was sufficient) of part B, which require a showing either that the services performed were outside the employer's usual course of business or that the services were performed outside of all of the employer's places of business, were satisfied.

Part C of the ABC test "calls for an enterprise that exists and can continue to exist independently of and apart from the particular service relationship.  The enterprise must be one that is stable and lasting—one that will survive the termination of the relationship."  *Carpet Remnant Warehouse, supra,* 125 *N.J.* at 585, 593 *A.*2d 1177.

In *Trauma Nurses, supra,* we were convinced that the nurses, due to their educational and licensing requirements, could obtain employment outside of petitioner's brokerage service. *Id.,* 242 *N.J.Super.* at 144–48, 576 *A.*2d 285. We noted that most of the nurses worked simultaneously for other brokers, hospitals and health care institutions. *Id.* at 148, 576 *A.*2d 285. The same is apparently true with respect to these musicians.

■ Petitioner testified that all 24 people who had rendered services to Trieste worked regularly for others as musicians, vocalists, audio engineers or light directors. The Department refuted this testimony as to only one musician, Kenneth Schulte, whose 1988 tax return listed no other gross income. While we have no basis to refute Schulte's tax return and whether Schulte was paid for working for other bands during the audit period, petitioner testified three times that he personally observed Schulte and others performing with other bands, which would not surprise us given the activities of the other band members. Also, no similar evidence was offered with respect to the other individuals who provided services to Trieste during the audit period. except petitioner testified that he saw advertisements and business cards for many of the musicians with whom he worked. At the informal hearing with redetermination auditor Ohland, petitioner submitted resumes of Steve Jankowski and Tom Timko, who performed as the "Hundred Proof Horns," and a March 7, 1990, issue of the newspaper *East Coast Rocker,* which contained musicians' advertisements. Thus, we have only petitioner's generalized comments about their other jobs. This deficiency requires a remand.

Petitioner's argument that the Department, by applying the ABC test in such a way as to make him liable for unemployment and disability contributions for Trieste's musicians, has in effect promulgated a new rule that will have a wide-ranging impact on the music industry in New Jersey is, based upon this record, clearly without merit. *R.* 2:11–3(e)(1)(E). So is his claim of due process violations.

We reverse the Commissioner's findings that petitioner did not satisfy parts A and B of the ABC test and remand the matter to the Department to afford petitioner an opportunity to satisfy part C of the test as suggested by the Supreme Court in *Carpet Remnant Warehouse*.