SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**East Bay Drywall, LLC v. Department of Labor & Workforce Development**
**(A-7-21) (085770)**

**Argued March 14, 2022 -- Decided August 2, 2022**

**FUENTES, P.J.A.D. (temporarily assigned), writing for a unanimous Court.**

In this appeal, the Court considers whether certain workers employed by East Bay Drywall, LLC, are properly classified as employees or independent contractors under the Unemployment Compensation Law, which sets forth a test -- commonly referred to as the "ABC test" -- to determine whether an individual serves as an employee. See N.J.S.A. 43:21-19(i)(6)(A) to (C).

East Bay is a drywall installation business that hires on a per-job basis. Once a builder accepts East Bay's bid for a particular project, East Bay contacts workers -- whom it alleges to be subcontractors -- to see who is available. Workers are free to accept or decline East Bay's offer of employment, and some workers have left mid-installation if they found a better job. East Bay's principal testified that some workers said they worked for businesses aside from East Bay but admitted that he did not produce any evidence to support that claim. East Bay provides the workers with the raw materials necessary to complete the drywall installation. The workers perform the labor but must provide their own tools and arrange for their own transportation to the worksites. East Bay does not dictate who or how many laborers the workers must hire to complete the project. Although East Bay does not direct how the workers install drywall, the principal made clear East Bay remains responsible for the finished product.

On June 30, 2013, East Bay, a business registered as an employer up to that point, ceased reporting wages to the Department of Labor and Workforce Development. Consequently, an auditor for the Department conducted a status audit that reviewed the workers East Bay hired between 2013 and 2016 to determine whether they were independent contractors, as defined by the ABC test, or employees of East Bay, requiring the employer to contribute to the unemployment compensation and temporary disability funds. In addition to meeting with East Bay's principal and accountant, the auditor requested documentation such as tax forms, business cards, and business insurance to determine whether the workers' businesses were independent entities.

1

The auditor ultimately found that approximately half of the alleged subcontractors working for East Bay between 2013 and 2016 -- four individuals and twelve business entities -- should have been classified as employees. The Department informed East Bay that it owed $42,120.79 in unpaid unemployment and temporary disability contributions.

East Bay contested the results of the audit and requested a full hearing in the Office of Administrative Law, which concluded that three of the workers were employees but that the other thirteen were independent contractors. The Commissioner of the Department, who makes the final agency determination in such matters, determined that all sixteen workers failed all three prongs of the ABC test and that they were therefore all East Bay's employees. The Appellate Division affirmed the Commissioner's final determination as to five workers but reversed as to the eleven other workers. 467 N.J. Super. 131, 150-52 (App. Div. 2021). The Department appealed as to the eleven workers, and the Court granted certification. 248 N.J. 400 (2021).

**HELD:** The Commissioner's finding that East Bay did not supply sufficient information to prove the workers' independence under the ABC test's prong C was not arbitrary, capricious, or unreasonable, but rather was supported by the absence of record evidence as to that part of the test. The Court is satisfied that all sixteen workers in question are properly classified as employees, and it remands to the Department for calculation of the appropriate back-owed contributions.

1. The Unemployment Compensation Law (UCL), N.J.S.A. 43:21-1 to -71, was designed to act as a cushion "against the shocks and rigors of unemployment." Carpet Remnant Warehouse, Inc. v. Dep't of Labor, 125 N.J. 567, 581 (1991). It requires that employers and employees make contributions to the unemployment compensation and temporary disability benefit funds. Those contributions come from "a specified percentage of the employee's wages." Id. at 582 (citing N.J.S.A. 43:21-7). An employer's contributions are due once the employer pays the employee. N.J.A.C. 12:16-5.1(a). N.J.S.A. 43:21-19(i)(1)(A) defines employment as "[a]ny service . . . performed for remuneration or under any contract of hire, written or oral, express or implied." But, even if a worker receives compensation for work performed, the worker will not be considered an employee if the ABC test is satisfied. See id. § 19(i)(6). The ABC test is conjunctive; thus, all three prongs must be satisfied for a worker to be considered an independent contractor. The ABC test presumes a worker is an employee. The party challenging the Division's classification carries the burden to "establish the existence of all three criteria of the ABC test." Carpet Remnant, 125 N.J. at 581. Whether a worker is an employee under the ABC test "is fact-sensitive, requiring an evaluation in each case of the substance, not the form, of the relationship." Ibid. (pp. 16-18)

2.  Because the Court finds that East Bay did not supply sufficient information to satisfy its prong C burden regarding the eleven entities whose classification has been challenged by the Department, it does not analyze prongs A and B of the ABC test. The Court suggests, however, that the Department exercise its statutory authority and expertise, particularly in light of the prevalence of remote work today, to promulgate regulations clarifying where an enterprise "conducts an integral part of its business" and what constitutes the "usual course of the business" under prong B of the ABC test.  See N.J.S.A. 43:21-7g; N.J.A.C. 12:71-1.3.  (pp. 18-19)

3.  Prong C of the ABC test broadly asks whether a worker can maintain a business independent of and apart from the employer.  If the worker "would join the ranks of the unemployed" when the relationship ends, the worker cannot be considered independent under prong C.  Carpet Remnant, 125 N.J. at 585-86.  In some cases, it will be obvious that a worker was entirely dependent upon an employer because, when the working relationship ends, the worker is fully unemployed.  In other cases -- where it is not as clear that the worker will be unemployed without the working relationship -- other factors may be illustrative of the underlying public policy at stake.  For such situations, case law provides a variety of factors to be considered when evaluating a worker's "ability to maintain an independent business," and the Court reviews those factors, including the factors set forth in Carpet Remnant, 125 N.J. at 592-93.  (pp. 19-22)

4.  In the instant case, the information East Bay provided is insufficient to prove the entities' independence.  The probative value of refusal to accept or complete work is limited because, like an employee, even a bona-fide independent contractor is not free from the pressure to accept a job.  A certificate of insurance could be a significant indication of independence, and business registration information may bolster the inference of independence.  Here, however, these documents do not elucidate whether the disputed entities were engaged in independent businesses separate and apart from East Bay.  The case at hand presents one of those less-obvious situations of whether the workers are truly independent business entities, but East Bay has provided little or no documentary evidence to address the factors that indicate independence.  The Court therefore finds that the Commissioner's final decision was not arbitrary, capricious, or unreasonable, and it defers to that agency decision.  See id. at 587.  That decision is consistent with the public policy codified in the UCL.  (pp. 22-26)

**AFFIRMED in part, REVERSED in part, and REMANDED to the Department.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, and PIERRE-LOUIS join in JUDGE FUENTES's opinion.**

SUPREME COURT OF NEW JERSEY

A-7 September Term 2021

085770

East Bay Drywall, LLC,

Petitioner-Respondent,

v.

Department of Labor
and Workforce Development,

Respondent-Appellant.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
467 N.J. Super. 131 (App. Div. 2021).

| Argued | Decided |
|--------|---------|
| March 14, 2022 | August 2, 2022 |

Christopher Hamner, Deputy Attorney General, argued
the cause for appellant (Matthew J. Platkin, Acting
Attorney General, attorney; Jane C. Schuster and Alec
Schierenbeck, Assistant Attorneys General, of counsel,
and Achchana Ranasinghe, Deputy Attorney General, on
the briefs).

Jennifer B. Barr argued the cause for respondent (Cooper
Levenson, attorneys; Jennifer B. Barr and Russell L.
Lichtenstein, on the brief).

Ravi Sattiraju argued the cause for amicus curiae
National Employment Lawyers Association of New
Jersey (Sattiraju & Tharney, attorneys; Ravi Sattiraju, of
counsel and on the brief).

1

Jeffrey S. Jacobson argued the cause for amicus curiae New Jersey Civil Justice Institute (Faegre Drinker Biddle & Reath, attorneys; Jeffrey S. Jacobson, Jennifer G. Chawla, and W. Joshua Lattimore, on the brief).

JUDGE FUENTES (temporarily assigned) delivered the opinion of the Court.

This appeal originated from a routine audit of East Bay Drywall, LLC (East Bay), conducted by the Department of Labor and Workforce Development (the Department), for the years 2013 through 2016. The purpose of the audit was to determine whether East Bay owed certain payments to the Unemployment-Compensation and Temporary-Disability Benefit funds under N.J.S.A. 43:21-7. That determination turns on whether certain workers employed by East Bay during the audit period are properly classified as employees or independent contractors under the Unemployment Compensation Law, which sets forth a test -- commonly referred to as the "ABC test" -- to determine whether an individual serves as an employee. See N.J.S.A. 43:21-19(i)(6)(A) to (C).

In 2017, the Department's audit found sixteen of East Bay's alleged subcontractors were actually employees under the ABC test. East Bay thus owed $42,120.79 in unpaid contributions. Following an evidentiary hearing before an Administrative Law Judge (ALJ), the Commissioner of the

2

Department concluded that the sixteen drywall workers were correctly classified by the Department as employees and ordered East Bay "to immediately remit to the Department . . . $42,120.79 in unpaid unemployment and temporary disability contributions" for the years 2013 through 2016, together with interest and penalties.

East Bay appealed the Commissioner's final decision and order. In a published opinion, the Appellate Division held that only five of the sixteen entities should have been classified as employees because they were not viable independent business entities under the ABC test. E. Bay Drywall, LLC v. Dep't of Labor & Workforce Dev., 467 N.J. Super. 131, 152-53 (App. Div. 2021). The Appellate Division reversed the Commissioner's decision as to the remaining eleven entities, however, noting that their provision of insurance certificates constituted "significant . . . indicia of their independent business status under part C" of N.J.S.A. 43:21-19(i)(6). Id. at 152.

We affirm in part and reverse in part the Appellate Division's judgment. We affirm as to the five entities found to be employees and reverse the court's determination as to the other eleven workers. The Commissioner's finding that East Bay did not supply sufficient information to prove the workers' independence under the ABC test's prong C was not arbitrary, capricious, or unreasonable, but rather was supported by the absence of record evidence as to

3

that part of the test.  In this light, we are satisfied that all sixteen workers in question are properly classified as employees, and we remand to the Department for calculation of the appropriate back-owed contributions.

I.

A.

East Bay is a drywall installation business operating in Stone Harbor, Avalon, and Sea Isle, New Jersey.  East Bay's principal, Benjamin DeScala, testified before the ALJ.  He explained that ninety percent of East Bay's work consists of drywalling residential homes.  According to DeScala, East Bay gets its business by communicating with builders who are already in the process of constructing homes.  East Bay thereafter hires workers to complete the drywall installation, taping, and finishing on a per-job basis.

Once a builder accepts East Bay's bid for a particular project, East Bay contacts workers -- whom it alleges to be subcontractors -- to see who is available.  Workers are free to accept or decline East Bay's offer of employment, and some workers have left mid-installation if they found a better job.  DeScala testified some of his workers told him that they worked for businesses aside from East Bay.  DeScala admitted, however, that he did not produce any evidence to support that claim.  When asked why he did not

4

produce such evidence during the audit, DeScala responded: "I don't recall being asked."

DeScala testified that East Bay deals with and hires all its workers in the same manner. Before employing a worker, DeScala requests an up-to-date certificate of liability insurance and tax identification numbers to ensure the worker is an independent entity. Sometimes, he asks other contractors about the worker's experience and quality of work. DeScala testified he decides the rate of pay for each worker and does not pay the worker until the job is done to his satisfaction. DeScala made clear that he documents the workers' compensation via an Internal Revenue Service Form 1099.

East Bay provides the workers with the raw materials necessary to complete the drywall installation. The workers perform the labor but must provide their own tools and arrange for their own transportation to the worksites. East Bay does not dictate who or how many laborers the workers must hire to complete the project. Although East Bay does not direct how the workers install drywall, DeScala made clear East Bay remains responsible for the finished product. DeScala testified that he inspects the drywalling after the workers are finished and "[i]f the work doesn't come out good [he has] to hire another subcontractor to come fix it."

B.

On June 30, 2013, East Bay, a business registered as an employer up to that point, ceased reporting wages to the Department. Consequently, Jesse Handler, an auditor for the Department, conducted a status audit to "determine [whether East Bay] should be registered as an employer or if [it was] correctly not registered as an employer."[1] The audit reviewed the workers East Bay hired between 2013 and 2016 to determine whether they were independent contractors, as defined by the ABC test, or employees of East Bay, requiring the employer to contribute to the unemployment compensation and temporary disability funds.

On January 17, 2017, Handler sent a letter to East Bay apprising it of the forthcoming audit. On January 31, Handler met with DeScala and Keating Weinberger, East Bay's certified public accountant, to discuss how East Bay obtains its customers and operates its business.

Handler thereafter sent non-certified letters to each of East Bay's alleged subcontractors, requesting copies of their income tax returns, IRS Form 1040 Schedule Cs, business cards, invoices, letterheads, advertisements, and

---

[1] According to Handler, "[a] status audit is issued on an employer or entity that is not currently registered to determine if they should be registered as an employer. . . . A registered employer is an entity that has employees."

6

business insurance. He sought this documentation to determine whether the workers would be able to show that their businesses were independent entities. When a worker did not answer, Handler requested forwarding address information from the postmaster of the relevant county. Several workers did not leave forwarding addresses, and some simply did not respond.

Handler found that approximately half of the alleged subcontractors working for East Bay between 2013 and 2016 should have been classified as employees. He determined a total of sixteen alleged subcontractors were non-bona fide: four individuals and twelve business entities.[2]

When Handler informed East Bay of his findings, East Bay forwarded several documents purporting to show that some of the business entities Handler deemed non-bona fide were actual independent business entities. Those documents included business entity registration information from the New Jersey Business Gateway Business Entity Information and Records Service and active certificates of insurance. This information showed that, although several of the entities were registered as corporations during the audit

---

[2] The four individuals are Ami Serra, Dennis Serra, Kyle Cuevas, and Dan Martin. The twelve business entities are Force 1 Drywall, LLC; A&B Builders, LLC; Arce Drywall, LLC; Caslo Drywall; Eligio Drywall; JEC Construction; AMA Construction; High Quality Builders; Quick Carpentry; Three State Drywall; Simple Construction; and Serra Drywall.

period, many were delinquent in their filings while working for East Bay. Handler informed East Bay that the documents "did not affect the audit at this time however I have included them in the audit file."

In a letter dated June 13, 2017, the Department informed East Bay that it owed $42,120.79 in unpaid unemployment and temporary disability contributions. East Bay contested the results of the audit and requested a full hearing in the Office of Administrative Law.

II.

A.

The ALJ conducted evidentiary hearings on February 28 and March 7, 2019. A "non-attorney representative" appeared for the Department. He emphasized that the evidence would prove the payments East Bay made to these alleged subcontractors were in reality payments to corporations in name only. The Department's representative claimed the evidence would prove these "alleged corporations and LLCs . . . were not in good standing with the State of New Jersey."

In response, East Bay's attorney argued the workers at issue here were independent business entities, not employees, and East Bay's business model was consistent with an independent contractor relationship.

The ALJ heard testimony from Handler and DeScala and ultimately found DeScala's testimony credible. Conversely, the ALJ did not make any credibility assessment of Handler's testimony.

On July 15, 2019, the ALJ issued an Initial Decision affirming the results of the Department's audit for three workers and reversing the audit classification of the thirteen remaining entities. The ALJ applied the three-pronged ABC test, which "analyzes whether the individuals are under the direction and control of the employer, whether the work is outside of the usual course of business for which such service was performed, and finally, whether such individual is customarily engaged in an independently established trade, occupation, profession or business." See N.J.S.A. 43:21-19(i)(6).

Applying the ABC test, the ALJ found most of the workers satisfied prongs A and B. With respect to prong C, the ALJ held that the remaining thirteen workers met the requirements of prong C because they each existed independently from their relationship with East Bay. The ALJ found the business entity registration information demonstrated those entities were lasting and stable and could continue to operate past the termination of their relationships with East Bay.

The ALJ concluded that Dan Martin, Ami Serra, and Kyle Cuevas did not satisfy the ABC test. Dan Martin did not satisfy prong B because he

9

lacked other sources of income; Ami Serra did not satisfy prong C because he did not operate a business; and Kyle Cuevas "failed" the test because East Bay did not provide any evidence that he was an independent contractor. Based on these findings, the ALJ affirmed the auditor's conclusions that these three were employees and East Bay was required to make unemployment and temporary disability contributions on their behalf.

## B.

The Commissioner of the Department is responsible to conduct the final agency review and is authorized to make the final agency determination in this matter. The Commissioner affirmed the ALJ's decision regarding the three individuals classified as employees under the ABC test. The Commissioner rejected the ALJ's conclusion as to the other thirteen entities, however, and found that all sixteen workers were in fact employees of East Bay during the relevant time period.

First, the Commissioner found that every worker failed prong A because East Bay set the terms of work and failed prong B because the workers' labor was not outside East Bay's places of business. Finally, the Commissioner held that all the workers failed prong C because East Bay did not supply sufficient information showing that the workers existed independent of East Bay.

10

The Commissioner elaborated that prong C requires the workers' businesses to persist after the end of the employment relationship. Here, the Commissioner noted no evidence was submitted showing the entities "had properly maintained their corporate status while performing services for and receiving payment from East Bay during the audit period." Furthermore, the Commissioner noted that the ALJ did not discuss the pertinent factors and found that East Bay failed to present sufficient evidence to prove prong C.

Consequently, the Commissioner found that all sixteen workers were East Bay's employees and reinstated the auditor's findings.

C.

Pursuant to Rule 2:2-3(a)(2), East Bay appealed the Commissioner's decision to the Appellate Division. The Appellate Division affirmed in part and reversed in part the Commissioner's final determination. 467 N.J. Super. at 140. As to prong A, the Appellate Division agreed with the ALJ's determination that East Bay did not control the workers. Id. at 150. Regarding prong B, the Appellate Division also agreed with the ALJ, noting that places of business are only "those locations where the enterprise has a physical plant or conducts an integral part of its business." Id. at 151 (quoting Carpet Remnant Warehouse, Inc. v. Dep't of Labor, 125 N.J. 567, 592 (1991)).

11

With respect to prong C, the Appellate Division agreed with the Commissioner that five of the sixteen alleged subcontractors failed to show they actually operated as independent business entities. Id. at 150-52. The Appellate Division, however, parted ways with the Commissioner regarding the other eleven entities. Id. at 152. The appellate court found the Commissioner specifically analyzed only two entities, while generally referring to the others. Ibid. The Appellate Division noted the supplied certificates of insurance were "significant, albeit not necessarily dispositive, indicia of their independent business status under part C." Ibid. In the view of the Appellate Division, the fact that these entities all ceased to exist after 2016 was not determinative because those companies may very well have operated independent businesses up until the end of 2016. Ibid.

The Appellate Division thus affirmed the Commissioner's findings with regard to Dan Martin, Ami Serra, Kyle Cuevas, JEC Construction, and Caslo Drywall Corporation. Id. at 152. As to the remaining eleven entities, the appellate court reversed and remanded the matter for a recalculation of unemployment and temporary disability contributions owed by East Bay. Id. at 152-53.

This Court granted the Department's petition for certification. 248 N.J. 400 (2021). We also granted leave to appear as amici curiae to the National

12

Employment Lawyers Association of New Jersey (NELA) and to the New Jersey Civil Justice Institute (NJCJI).

III.

A.

Before this Court, the Department argues the Appellate Division made four errors in reversing the Commissioner's ruling. First, the Department asserts that the Appellate Division misapplied prong C by not considering the factors laid out in Carpet Remnant, 125 N.J. at 592-93. Second, the Department maintains that the Appellate Division imposed a "burdensome standard" on the Commissioner by requiring him to list the findings for every business, even where the businesses all fall into the same category. Third, the Department argues the Appellate Division misconstrued prong B of the ABC test by concluding that East Bay did not perform an integral part of business at its work sites. Finally, the Department argues that the Appellate Division misinterpreted the Commissioner's statements regarding the application of the ABC test to sole proprietorships.

Amicus NELA generally supports the Department's argument but limits its position to two issues. First, it argues that the Appellate Division erred in holding that East Bay's workers performed services outside all the places of East Bay's business under prong B. Second, NELA avers that the Appellate

13

Division erred in its prong C analysis by relying solely on the business entity information and incorporation status of East Bay's workers.

## B.

Conversely, East Bay vehemently disagrees with the Department's characterization of the Appellate Division's judgment and maintains that the appellate court correctly decided the issues raised here. East Bay asserts that the Appellate Division appropriately applied the ABC test and urges this Court to affirm its decision.

Amicus NJCJI supports East Bay's position and asks this Court to affirm the Appellate Division decision. Specifically, NJCJI argues that remote work sites cannot constitute part of an employer's places of business under prong B unless the employer regularly uses the same locations and exercises a degree of ongoing control over them. NJCJI also asserts that this Court should provide greater guidance on the standard of proof employers must provide to satisfy prong C.

## IV.

## A.

We review a decision made by an administrative agency entrusted to apply and enforce a statutory scheme under an enhanced deferential standard. Hargrove v. Sleepy's, LLC, 220 N.J. 289, 301-02 (2015). We are bound to

defer to the agency's factual findings if those conclusions are supported by the record. Carpet Remnant, 125 N.J. at 587. And "[w]e will defer to an agency's interpretation of both a statute and implementing regulation, within the sphere of the agency's authority, unless the interpretation is 'plainly unreasonable.'" In re Election L. Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010) (quoting Reilly v. AAA Mid-Atl. Ins. Co. of N.J., 194 N.J. 474, 485 (2008)). "This deference comes from the understanding that a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise." Ibid.

Generally, courts review the decision of a public agency to determine whether it was "arbitrary, capricious, or unreasonable, or . . . lack[ed] fair support in the record." Allstars Auto Grp., Inc. v. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (quoting Russo v. Bd. of Trs., PFRS, 206 N.J. 14, 27 (2011)). Under that standard, the reviewing court considers

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law;
>
> (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and
>
> (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

15

[Id. at 157-58 (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

B.

The Unemployment Compensation Law (UCL), N.J.S.A. 43:21-1 to -71, was designed to act as a cushion "against the shocks and rigors of unemployment." Carpet Remnant, 125 N.J. at 581 (quoting Provident Inst. for Sav. in Jersey City v. Div. of Emp. Sec., 32 N.J. 585, 590 (1960)). "Because the statute is remedial, its provisions have been construed liberally, permitting a statutory employer-employee relationship to be found even though that relationship may not satisfy common-law principles [of employment]." Carpet Remnant, 125 N.J. at 581. The UCL requires that employers and employees make contributions to the unemployment compensation and temporary disability benefit funds. Those contributions come from "a specified percentage of the employee's wages." Id. at 582 (citing N.J.S.A. 43:21-7). An employer's contributions are due once the employer pays the employee. N.J.A.C. 12:16-5.1(a).

In this context, a finding of employee status under the UCL "has two significant consequences." Carpet Remnant, 125 N.J. at 582. "First, the employer and the employee must" make contributions to the unemployment and temporary disability funds. Ibid. (citing N.J.S.A. 43:21-7). And second,

16

the employee will be eligible to collect unemployment benefits should the worker be discharged from employment and otherwise qualify. Ibid. (citing N.J.S.A. 43:21-4 and -5).

N.J.S.A. 43:21-19(i)(1)(A) defines employment as "[a]ny service . . . performed for remuneration or under any contract of hire, written or oral, express or implied." But, even if a worker receives compensation for work performed, the worker will not be considered an employee if the ABC test is satisfied. See id. § 19(i)(6). In that case, the worker is an independent contractor, and the employer need not contribute to the unemployment or temporary disability funds on the worker's behalf.

The text of the statute that established the ABC test reads as follows:

> Services performed by an individual for remuneration shall be deemed to be employment . . . unless and until it is shown to the satisfaction of the division that:
>
> (A) Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and
>
> (B) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and
>
> (C) Such individual is customarily engaged in an independently established trade, occupation, profession or business.

17

[Ibid.]

The ABC test is conjunctive; thus, all three prongs must be satisfied for a worker to be considered an independent contractor. Schomp v. Fuller Brush Co., 124 N.J.L. 487, 489 (Sup. Ct. 1940). The ABC test presumes a worker is an employee, Hargrove, 220 N.J. at 305, and if the record fails to establish any one prong, the Department must deem the worker an employee, Schomp, 124 N.J.L. at 489. The party challenging the Division's classification carries the burden to "establish the existence of all three criteria of the ABC test." Carpet Remnant, 125 N.J. at 581.

Whether a worker is an employee under the ABC test "is fact-sensitive, requiring an evaluation in each case of the substance, not the form, of the relationship." Ibid. The factfinder must look beyond the employment contract and the payment method to determine the true nature of the relationship. See Phila. Newspapers Inc. v. Bd. of Rev., 397 N.J. Super. 309, 320 (App. Div. 2007) (finding that a newspaper salesman was an employee even though his employment contract explicitly classified him as an independent contractor and he received an IRS Form 1099).

C.

East Bay does not challenge the Appellate Division's judgment affirming that Dan Martin, Ami Serra, Kyle Cuevas, JEC Construction, and

18

Caslo Drywall are properly classified as employees. Because we are convinced East Bay did not supply sufficient information to satisfy its prong C burden regarding the remaining eleven entities, we need not analyze prongs A and B.[3]

1.

Prong C "provides the closest connection between the obligation to pay taxes and the eligibility for benefits." Carpet Remnant, 125 N.J. at 589. The thrust of prong C broadly asks whether a worker can maintain a business independent of and apart from the employer. See Gilchrist v. Div. of Emp. Sec., 48 N.J. Super. 147, 158 (App. Div. 1957). Indeed, "the [prong] C standard is satisfied when a person has a business, trade, occupation, or profession that will clearly continue despite termination of the challenged relationship." Carpet Remnant, 125 N.J. at 586 (citing Trauma Nurses, Inc. v.

_____

[3] Prong B of the ABC test requires the entity's work to be "outside the usual course of the business" or "outside of all the places of business" of the potential employer. N.J.S.A. 43:21-19(i)(6)(C). In Carpet Remnant, this Court declined to define the term "usual course of the business." 125 N.J. at 584-85. Furthermore, we held "the places of business of the enterprise" are limited to "only . . . those locations where the enterprise has a physical plant or conducts an integral part of its business." Id. at 592. We suggest the Department exercise its statutory authority and expertise, particularly in light of the prevalence of remote work today, to promulgate regulations clarifying where an enterprise "conducts an integral part of its business" and what constitutes the "usual course of the business." See N.J.S.A. 43:21-7g; N.J.A.C. 12:71-1.3.

19

Dep't of Lab., 242 N.J. Super. 135, 148 (App. Div. 1990)). It must be "stable and lasting," capable of "surviv[ing] the termination of the relationship." Gilchrist, 48 N.J. Super. at 158. If the worker "would join the ranks of the unemployed" when the relationship ends, the worker cannot be considered independent under prong C. Carpet Remnant, 125 N.J. at 585-86; see also Schomp, 124 N.J.L. at 491-92.

In some cases, it will be obvious that a worker was entirely dependent upon an employer because, when the working relationship ends, the worker is fully unemployed. See Schomp, 124 N.J.L. at 491 (holding that a door-to-door salesman was not independent under prong C because "when the agreement between these parties was terminated the claimant joined the ranks of the unemployed"); Phila. Newspapers, 397 N.J. Super. at 323 (holding that a subcontractor delivering newspapers failed prong C because he never advertised himself as a newspaper delivery person; he never ran a newspaper delivery business; and he "joined the ranks of the unemployed" after the business relationship ceased); Steel Pier Amusement Co. v. Unemp. Comp. Comm'n, 127 N.J.L. 154, 157 (1941) (holding that musicians working for an amusement park were not independent under prong C because they were employed solely by the park for a set period of time).

20

In other cases -- where it is not as clear that the worker will be unemployed without the working relationship -- other factors may be illustrative of the underlying public policy at stake. For example, this Court has provided several factors to be considered when evaluating a worker's "ability to maintain an independent business," including

> the duration and strength of the [workers'] businesses, the number of customers and their respective volume of business, the number of employees, . . . the extent of the [workers'] tools, equipment, vehicles, and similar resources [and] . . . the amount of remuneration each [worker] received from [the employer] compared to that received from other [employers].
>
> [Carpet Remnant, 125 N.J. at 592-93.]

Those prong C factors themselves are just pieces of the puzzle, factors that can illuminate whether a worker has a truly independent business. Further, New Jersey courts have looked to other factors to determine a worker's independence under prong C. In Gilchrist, for instance, the Appellate Division considered whether door-to-door salesmen operated business establishments; whether they maintained telephone listings or business stationery; who possessed the inventory; who bore the risk of loss; and who benefitted from the goodwill that the company generated. 48 N.J. Super. at 158-59. In Trauma Nurses, the Appellate Division considered whether nurses assigned to temporary positions were required to maintain their own

21

educational and licensure requirements, whether they could obtain other full- or part-time positions, and whether they worked for other agencies or hospitals. 242 N.J. Super. at 137, 148.

2.

In the instant case, East Bay asserts Descala's testimony is "[t]he best evidence supporting" prong C. DeScala testified that he believed the subcontractors worked for other contractors, that sometimes a subcontractor would leave the job before it was completed, and that the subcontractors were free to accept or decline work. Further, East Bay provided certificates of insurance and business entity registration information for most of the disputed entities. We now hold this information is insufficient to prove the entities' independence.

First, generally speaking and subject to personal contractual obligations, even wholly dependent employees may choose to work for more than one employer or abruptly resign from their position. See Pierce v. Ortho Pharm. Corp., 84 N.J. 58, 65-66 (1980). But the probative value of refusal to accept or complete work is limited because, like an employee, even a bona-fide independent contractor is not free from the pressure to accept a job. Logic dictates that a subcontractor who consistently declines the call to work would soon have a silent phone.

Second, a certificate of insurance could be a significant indication of independence because an employer is generally "not vicariously liable for the negligent acts of the contractor in the performance of the contract," Puckrein v. ATI Transp., Inc., 186 N.J. 563, 574 (2006) (citing Bahrle v. Exxon Corp., 145 N.J. 144, 156 (1996)), and insurance policies issued to employers often exclude coverage for the acts of independent contractors, see, e.g., Sahli v. Woodbine Bd. of Educ., 193 N.J. 309, 322 (2008). Business registration information may bolster this inference, particularly if the registration demonstrates a complex ownership structure and continues in force beyond the business relationship in question.

Here, however, these documents do not elucidate whether the disputed entities were engaged in independent businesses separate and apart from East Bay. For most entities, insurance certificates were provided showing coverage for only one year of the audit period. Further, all but one of the business registrations reveal a sole individual in the ownership structure of each entity, and nearly all the registrations were revoked prior to the audit due to a failure to file the required reports for at least two consecutive years. At best, this information indicates the entities might have operated independently of East Bay. At worst, this information shows the entities were a business in name

only. In any event, a business might be duly registered but entirely dependent upon one contractor.

In sum, the case at hand presents one of those less-obvious situations of whether the workers are truly independent business entities. Thus, consideration of the prong C factors described in Carpet Remnant, Gilchrist, and Trauma Nurses is appropriate. But, in attempting to meet its burden, East Bay has provided little or no documentary evidence to address those factors. For example, East Bay has not provided evidence that the entities maintained independent business locations, advertised, or had employees. Further, despite the Department's request, none of the entities at issue provided information sufficient to demonstrate their independence.

The Commissioner found that DeScala's testimony, the business registration information, and the certificates of insurance were insufficient to prove independence. The Commissioner specifically noted that

> [t]he "business entity information" relied on so heavily by petitioner and the ALJ falls woefully short of meeting the standard enumerated in Carpet Remnant . . . . That is, it does not address the following factors with regard to each "drywall subcontractor": the duration and strength of the business, the number of customers and their respective volume of business, or the number of employees; nor does it address the amount of remuneration each "drywall subcontractor" received from East Bay compared to that received from others for the same services.

24

Because the record contains no information regarding those hallmarks of independence discussed above, we find that the Commissioner's final decision was not arbitrary, capricious, or unreasonable, and we defer to that agency decision. See Carpet Remnant, 125 N.J. at 587.

The Legislature made clear that the public policy underpinning the UCL must be considered when determining its application.

> As a guide to the interpretation and application of this chapter, the public policy of this state is declared to be as follows: economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. . . . The achievement of social security requires protection against this greatest hazard of our economic life. This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance.
>
> [N.J.S.A. 43:21- 2 (emphasis added).]

A business practice that requires workers to assume the appearance of an independent business entity -- a company in name only -- could give rise to an inference that such a practice was intended to obscure the employer's responsibility to remit its fund contributions as mandated by the State's employee protections statutes. That type of subterfuge is particularly damaging in the construction context, where workers may be less likely to be

25

familiar with the public policy protections afforded by the ABC test and consequently particularly vulnerable to the manipulation of the laws intended to protect all employees.[4]  Such a business practice also undermines the public policy codified in the UCL.

We thus conclude each entity at issue fails prong C of the ABC test and is therefore properly classified as an employee.

V.

The judgment of the Appellate Division is affirmed in part and reversed in part, and the matter is remanded to the Department for proceedings consistent with this opinion.


CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, and PIERRE-LOUIS join in JUDGE FUENTES's opinion.

---

[4]  See State of N.J., https://nj.gov (using "Search" feature, enter "construction workers") (last visited July 20, 2022) (providing links to descriptions of statewide investigations conducted by the Department that revealed employees being misclassified by their employers as independent contractors, resulting in underpayment of the employees); see also Report of Gov. Murphy's Task Force on Employee Misclassification 1, 6 (2019) (available at https://www.nj.gov/labor/assets/PDFs/Misclassification%20Report%202019.pdf) ("[M]isclassification is widespread and especially prevalent in construction . . . and other labor-intensive low-wage sectors, where employers can gain a competitive advantage by driving down payroll costs.").